COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
BENJAMIN H. KLEINE (257225)
(bkleine@cooley.com)
BETHANY C. LOBO (248109)
(blobo@cooley.com)
MAX A. BERNSTEIN (305722)
(mbernstein@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Plaintiff
TURO INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TURO INC., | Case No. 2:18-cv-6055 |
| Plaintiff, | **COMPLAINT OF TURO INC. FOR DECLARATORY JUDGMENT AND OTHER RELIEF** |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff Turo Inc. ("Turo") alleges as follows:

#### PRELIMINARY STATEMENT

1.     Turo is a software company that provides its community of users a platform to share their personal cars. As California law makes clear, Turo is not a rental car company because it does not own or rent a fleet of cars. In stark contrast, Turo operates a website[1] and mobile-device app platform through which users engage in

_____

[1] Turo's website can be found at https://turo.com/.

**personal** vehicle sharing.  That is, Turo allows users to connect with each other.  Turo works as follows: Owners list their privately-owned cars on Turo, indicating availability, price, and options for pickup.  Users seeking a car ("guests") use Turo to search listings, select and book a car, and arrange with the car's owner to pick it up at a mutually-agreed time and place.

2.    Turo's technology has benefitted the public by revolutionizing short-term car use.  Turo helps car owners, from students to retirees, turn idle cars into an income source.  Guests, in turn, love Turo because it gives them access to a wide selection of privately-owned cars with a superior user experience.

3.    The California legislature has embraced this innovative "sharing economy" model by amending the Insurance Code to recognize "personal vehicle sharing program[s]" as a new kind of entity, distinct from rental car companies (users of Turo's personal vehicle sharing program[2] are called "Users" herein).  Cal. Ins. Code § 11580.24.  California is not alone: Oregon, Washington, and Maryland have enacted similar laws to promote peer-to-peer car sharing and to clarify responsibilities in connection with such car sharing.  *See* Or. Rev. Stat. §§ 742.585-742.600; Wash. Rev. Code §§ 48.175.005-48.175.900; S.B. 743, 2018 Reg. Sess. (Md. 2018).

4.    Californians love Turo.  Hundreds of thousands of Californians are Turo Users, and more than 10,000 California car owners have listed their vehicles for sharing on Turo.

5.    Some Users coordinate through Turo's platform to exchange cars at or near Los Angeles International Airport ("LAX"), which is owned by the City of Los Angeles (the "City").  Because of these User exchanges, the City asserts that Turo must obtain an LAX rental car company permit.  This makes no sense as Turo is a software company and website operator, not a rental car company.

---

[2] Turo has other offerings beyond providing a personal vehicle sharing platform, and it plans to offer additional verticals in the coming year.  However, its personal vehicle sharing line of business is the subject of this lawsuit.

6.     Pursuant to the rental car company permit, the City would require Turo and its Users to pay exorbitant charges designed for rental car companies operating at LAX. Specifically, on information and belief, the City would charge Turo and its Users meeting at or near the LAX ten percent of each booking (the "Gross Receipts Charge"). This would be a pure revenue grab from local car owners that is totally unconnected to any benefit provided to, or service used by, Turo and its Users, or any supposed burden those Users cause by exchanging cars at or near LAX.

7.     Remarkably, this is not the only fee that the City seeks to impose. It also seeks a per-transaction "Customer Facilities Charge" meant to finance rental car infrastructure at the airport (the "LAX Facilities Charge"). On information and belief, the LAX Facilities Charge is calculated as $7.50 per day for the first five days of a car rental. If applied to a five-day Turo car share, it would require Turo and its Users to make a costly $37.50 payment to LAX—more than the price many travelers pay for private ground transportation from LAX to their final destination.

8.     For a week-long car share that costs a guest $500, this amounts to an eye-popping $87.50 in additional charges ($50 for the Gross Receipts Charge and $37.50 for the LAX Facilities Charge)—**all for simply exchanging keys at the LAX curb**. By contrast, Uber and Lyft users pay LAX a mere **$4** to meet cars curbside at the same LAX terminals. Limousines and taxis likewise meet passengers curbside and require a staging area, yet pay only $4 (limousines) or $5 (taxis) per trip. In other words, the City irrationally seeks to charge Turo and its Users ten or even twenty times as much as others who use similar or greater LAX resources.

9.     These exorbitant charges are not only arbitrary and unjust, but illegal. As an initial matter, LAX has threatened to sue Turo for the decision of its Users to meet at or near LAX. But such an action would run afoul of federal law, specifically the immunity provided by the Communications Decency Act, 47 U.S.C. § 230. Turo in no way requires that owners offer, or guests select for, LAX delivery—any such exchanges are arranged by the Users themselves. The Communications Decency Act thus provides

that Turo, an online platform that publishes the selections and offerings of its Users, cannot be liable for such publication or for User conduct stemming from the same.

10.     Moreover, under California Government Code § 50474.3, the LAX Facilities Charge can only be charged to rental car companies, which excludes both Turo and its Users.  In fact, the LAX Facilities Charge is collected specifically to finance construction of a behemoth "Consolidated Rent-a-Car Facility," which will provide a wide range of expensive services to rental car companies and their customers.  On information and belief, it will feature 30+ car washing bays, 60+ car maintenance bays, 180+ refueling stations, and 17,000+ stalls for rental cars—as well as over 100,000 square feet of customer service counters, booths, back-office space for rental car companies, and customer lobbies.  But Turo is democratizing car sharing, allowing Users to bypass this precise manner of expensive overhead and share cars directly with one another using nothing more than an online app or website.  Accordingly, Turo Users require none of the Consolidated Rent-a-Car Facility's amenities and will never need to visit this sprawling facility for any purpose.  Imposing the LAX Facilities Charge on Turo and its Users is thus unfair and unlawful under Government Code § 50474.3, and not rationally related to the purpose for which the fee is being collected.

11.     Both the Gross Receipts Charge and LAX Facilities Charge are also unconstitutional because they are unapproved taxes.  In 2010, California voters enacted Proposition 26 (the "Stop Hidden Taxes Initiative"), which amended Article XIII C of the California Constitution to require that any "fee" charged by a local government bear a reasonable relation to the cost of the service covered by the fee.  Any "fee" that fails this reasonable relation test is not legally a fee, but a tax that California voters are entitled to approve or reject.  Both of LAX's proposed charges fail the reasonable relation test as applied to Turo and its Users, and voters have never approved either. Thus, it is unconstitutional for the City to impose these charges on Turo and its Users.

12.     These arbitrary charges also violate the "dormant" commerce clause of Article I, Section 8 of the United States Constitution and the equal protection clauses of

the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the California Constitution.  The City has ignored the fact that these constitutional provisions prohibit it from (a) imposing an undue burden on interstate commerce by imposing exorbitant charges that are not actually related to any benefit provided to or service used by Turo and its Users; and (b) discriminating against Turo and its Users via charges that are dramatically higher than those imposed on businesses that use airport property in a similar manner.

13.     Turo would have preferred cooperation with LAX over litigation.  Turo's CEO, Andre Haddad, has repeatedly asked to meet with LAX executives to work towards an amicable resolution, but LAX has refused to meet with him even once.  Turo is prepared to (a) submit to a permitting regime appropriate for its business model as a personal vehicle sharing program; and (b) pay reasonable fees to LAX, similar to those charged to TNCs or taxis.  But LAX has refused even to engage with the idea of developing an appropriate permit for Turo and other personal vehicle sharing programs, instead arbitrarily (and incorrectly) insisting that Turo is a rental car company and must be permitted as one.  Indeed, LAX has aggressively cited Turo Users exchanging cars at the airport, sometimes even impounding their cars without cause.

14.     Turo is committed to protecting its community of Users and itself from arbitrary, unfair, unreasonable, and unlawful charges and LAX's aggressive, misplaced, and unconstitutional enforcement efforts. Given no other choice, Turo brings this lawsuit.  Specifically, Turo seeks to ensure that its new approach to peer-to-peer car sharing is not stymied by heavy-handed regulations meant to protect the interests of the large national car rental companies, to the detriment of entrepreneurial local residents looking to offset the high cost of car ownership in California by taking advantage of the economic opportunity Turo's platform provides.  Turo asks the Court for a judicial declaration that:

(a)     The City cannot hold Turo, an online platform, liable for its Users' decisions to meet at or near LAX.  Any such attempt would run afoul of immunity

afforded online entities by the Communications Decency Act, 47 U.S.C. § 230;

**(b)**   Because Turo is not a rental car company, Turo and its Users cannot be compelled by the City to pay LAX charges that only apply to rental car companies;

**(c)**   The City's attempts to impose the Gross Receipts Charge and LAX Facilities Charge on each booking made via Turo are unlawful as unauthorized taxes in violation of California Constitution, Article XIII C;

**(d)**   The City has violated the "dormant" commerce clause of the United States Constitution because the charges that the City is attempting to extract from Turo and its Users pose an undue burden on interstate commerce, are excessive in relation to the benefits conferred, and are not based on any fair approximation of Turo or its Users' use of LAX's facilities; and

**(e)**   The City has violated the equal protection clauses of the California and United States Constitutions because it unlawfully discriminates against Turo and its Users by imposing charges that far exceed the amount LAX assesses against similarly-situated companies and their users without any rational basis.

### LAX Takes Direction from National Car Rental Companies

**15.**   The campaign to misclassify Turo as a rental car company began with Enterprise Rent-a-Car and its parent, Enterprise Holdings (together, "Enterprise"). Enterprise is a powerful player that also owns Alamo Rent a Car and National Car Rental and controls 37 percent of the airport car rental market.[3]  Enterprise views Turo as an existential threat and has gone on the offensive to exclude Turo and its Users from airports nationwide.

---

[3] ENTERPRISE HOLDINGS, Enterprise, National, and Alamo Brands Earn Top Three Spots in J.D. Power 2016 Rental Car Satisfaction Study (Nov. 10, 2016), *available at* https://www.enterpriseholdings.com/en/press-archive/2016/11/enterprise_national_ and_alamo_brands_earn_top_three_spots_in_jd_power_rental_car_satisfaction_study. html (last visited July 11, 2018).

16.     Enterprise has launched a multi-pronged attack on Turo, lobbying for damaging legislation in state legislatures and aggressively pressuring airports to stifle Turo however possible.  Documents show Enterprise doing just that at LAX.   In September 2017, an Enterprise representative emailed LAX to discuss approaches to limiting car sharing via Turo at airports.  Shortly thereafter, in November 2017, a "contingent from Enterprise" met with an airport advocacy firm that represents LAX, with the specific purpose of "discuss[ing] Turo and the collection of fees at airports[.]" Enterprise explained at this meeting that it was planning to lobby for legislation that would subject Turo to regulations meant to govern rental car companies.  By February 2018, an Enterprise representative emailed LAX, seeking updates on Turo and lists of entities with and without LAX rental car permits.  LAX obliged and diligently reported to Enterprise that "the Los Angeles City Attorney is pursuing litigation against Turo[.]" These emails show that LAX officials treat Enterprise not as a permitted entity under their regulatory purview but instead as a patron LAX takes instructions from and actively attempts to protect from competition.

17.     This is particularly disconcerting, given that LAX refuses even to meet with Turo.  Tellingly, LAX and its representatives appear to have held more meetings with Enterprise than with Turo regarding **how to regulate Turo**.  And what Enterprise wants is clear: to stifle Turo's innovative model and, more generally, pro-consumer competition through regulation and litigation, to the detriment of taxpayers.

18.     LAX is unduly attentive to Enterprise's demands for a reason.  While Enterprise is increasingly outmoded from consumers' vantage point, it still wields enormous influence as the largest rental car company in America.  It exerts its power through armies of paid lobbyists, expansive political donations, and its own political

action committee, spending millions of dollars to advance its interests at each level of government.[4]  Enterprise spent over $850,000 on federal lobbyists alone in 2017.

19.   The Hertz Corporation has similarly sought to destroy Turo.  The Hertz Corporation is a subsidiary of Hertz Global Holding Inc., which owns Thrifty Car Rental and Dollar Rent a Car (collectively, "Hertz"), which collectively account for a significant share of the airport rental car market.  Hertz, like Enterprise, employs lobbyists to control legislation and regulatory policies.  Through these methods, Enterprise and Hertz have secured lavish tax loopholes worth billions of dollars per year to the rental car industry and favorable regulatory environments.  Like Enterprise, Hertz views Turo as an existential threat and seeks to use its influence to regulate, tax, or litigate Turo out of the airport market.

20.   Both Enterprise and Hertz have recently lobbied statehouses across the country, including in California, Maryland, Massachusetts, Hawaii, Missouri,  and Utah, to pass laws that would define Turo and other peer-to-peer car sharing companies as rental car companies under state law—thus tacitly admitting that Turo is not a rental car company under current laws.

21.   Under pressure from these national rental car companies, the City has threatened to spend taxpayer money on a lawsuit against Turo that would benefit Enterprise and Hertz above all others.  But contrary to the wishes of Enterprise and Hertz, the City cannot legally hold Turo, an online platform, responsible for such User conduct—let alone regulate Turo as if it were a rental car company or impose unlawful charges on Turo and its community of Users.

## PARTIES

22.   Turo Inc. is a Delaware corporation with its headquarters in San Francisco, California.

---

[4] *See* FEDERAL ELECTION COMMISSION, Enterprise Holdings, Inc. Political Action Committee Financial Summary, *available at* https://www.fec.gov/data/committee/C00219642/ (last visited July 11, 2018).

23.     The City of Los Angeles (the "City" or "Defendant") is a city located in southern California.  The City owns and operates LAX through the Los Angeles World Airports, which is governed by the Board of Airport Commissioners.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction of this action under 28 U.S.C. § 1331 because Turo alleges violations of its rights under the Constitution and laws of the United States.

25.     This Court has supplemental jurisdiction over those claims arising under California law pursuant to 28 U.S.C. § 1367.

26.     The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

27.     This Court has personal jurisdiction over Defendant, because Defendant resides in California and has its principal place of business in California.

28.     Venue is proper under 28 U.S.C. § 1391 because Defendant is located and resides in this judicial district and in the State of California, and because a substantial part of the events giving rise to Turo's claims for relief occurred in this judicial district.

## ADDITIONAL STATEMENT OF FACTS

### Turo Brings Short-Term Personal Car Sharing to the Sharing Economy

29.     Turo (formerly RelayRides) was founded in April 2009[5] by a Harvard Business School student named Shelby Clark:

> It was Thanksgiving Day in 2008, and I needed to rent a Zipcar.  It was snowing, and I had to bike 2 1/2 miles through Boston snow to get to a car.  "I passed hundreds of cars on the road that had clearly not been driven for weeks, and that was when the light bulb went on.  I thought: 'Wait a minute! I should be taking one of those cars!'"

---

[5] Turo did not operate in California before December 2010.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30.   Clark researched insurance and technologies and surveyed the marketplace to see whether others were interested in sharing their cars.  Then, in April 2009, he founded RelayRides, the first peer-to-peer sharing service.  Unlike fleet-based services like Zipcar, RelayRides allowed individual car owners to share their vehicles.

31.   Clark envisioned a platform that would pair people who have spare cars with those willing to pay reasonable fees to use them.  Every day, hundreds of thousands of cars sit unused in America; American cars remain parked over 95 percent of the time. Turo, as an innovator in the sharing economy, provides an elegant solution to this waste. Its model makes sense for car owners and drivers.  As the sharing economy grows, the need for dedicated rental cars, which require expensive overhead and massive environmental waste, is diminishing.  Turo is the largest and most successful peer-to-peer car sharing platform provider in the United States.

32.   On average, California car owners who use Turo earn about $3,500 per year, which helps many to offset their car loan and insurance payments.  This extra source of income benefits Californians who belong to the over 90 percent of American households that own one or more cars, including seniors on fixed incomes and young people with student loans.  Indeed, the majority of car owners using Turo report using their earnings to make car payments, reduce debt, or save for their future.

33.   Turo lets these households realize income on an otherwise idle asset while reducing environmental impacts by eventually decreasing the number of cars on the road.  In fact, researchers at the University of California, Berkeley have found that "shared mobility" platforms like Turo can create new revenue sources from underused resources, support healthy lifestyles by reducing driving, and benefit the environment by encouraging individuals to forgo car ownership and instead use public transit supplemented by car sharing.  Likewise, United States Department of Transportation researchers have found that members of car sharing programs are more likely to sell

Cooley LLP
Attorneys At Law
San Francisco

10.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

their cars and avoid buying new cars.  Reductions in car ownership, in turn, correlate with increased public transit use, walking, biking, and reduced parking demand.[6]

### Turo Is an Online Matchmaking Platform
### Not Liable for the Conduct of Its Users

34.      Turo maintains a software platform that matches car owners with those in need of a car.  This business model is fundamentally different from car rental companies, which own vast fleets of vehicles, run private networks of airport vans and shuttle buses, utilize significant real estate to conduct their operations, and rake in immense profits due to generous tax breaks from the federal and state government (including direct subsidies, bail-outs, waiver of capital gains taxes for car purchases and sales, and pass-through of registration and licensing fees) in excess of $3 billion per year.

35.      Private car owners who use Turo set up a profile and list their cars by describing the make, model, location, and special features of the cars, and indicating availability.  Owners may also input more detailed descriptions of the cars and set guidelines for use, including price and terms of delivery.  Most car owners also upload photographs of their cars.

36.      Users who wish to book a car share also set up profiles on Turo.  They can search Turo's website or app by: (a) typing a desired location into the search menu on Turo's main homepage; and (b) inputting a desired timeframe using a drop-down menu. These Users then gain access to over 800 makes and models, and—unlike if they were renting from a rental car company—they can pick a car with the specific make, model,

---

[6] *See, e.g.*, Susan Shaheen & Adam Cohen, *Overview of Shared Mobility*, ITS BERKELEY POLICY BRIEFS, *available at* https://cloudfront.escholarship.org/dist/prd/ content/qt8w77044h/qt8w77044h.pdf?t=p2q24m&v=lg (last visited July 11, 2018); UNITED STATES DEPARTMENT OF TRANSPORTATION, *Shared Mobility: Current Practices and Guiding Principles* (hereafter, "Shared Mobility") at ix, *available at* https://ops.fhwa.dot.gov/publications/fhwahop16022/fhwahop16022.pdf (last visited July 11, 2018).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

and color they want.  That is, they can pick the exact car that fits the occasion and their budget and coordinate directly with its owner for delivery or pickup from a pre-determined location.

37.  Turo does not require that owners offer, or guests receive, car delivery. Instead, the owner and guest can agree that the guest will pick up the car from the location where the owner keeps it (or at any other owner-specified location).

38.  If the owner chooses to deliver the car, she can use the Turo platform tools to create a completely customized delivery option.  That is, the owner can offer to deliver the car at any location that she agrees with the guest, or the two can simply agree to coordinate with each other (either via Turo's messaging tools, or via phone, text, or email) prior to the exchange.

39.  An owner may also optionally offer delivery to "LAX," only if she agrees with the guest to meet there.  Even then, Turo does not dictate where the owner and her guest will exchange the car.  They can agree to meet anywhere at or near the airport, including in a parking lot, at the curb, or at any other customized location.

40.  Because Turo is an online platform, and because Turo does not require or mandate LAX exchanges, the Communications Decency Act, 47 U.S.C. § 230 precludes liability stemming from such User-organized exchanges.

### The California Legislature Has Recognized That Turo's Car Sharing Model Is Legally Distinct From the Rental Car Company Model

41.  As noted above, Turo is a car sharing platform, without any fleet of cars to "rent."  Just as Kayak and Expedia are not airlines, eBay is not an auctioneer, StubHub is not a ticket seller, Skype is not a telecom company, and DoorDash is not a restaurant, Turo is not a rental car company.

42.  California law is in accord.  California Insurance Code § 11580.24, enacted in 2010, created a legal framework for personal vehicle sharing programs.  The California legislature thus recognized that such programs are distinct from rental car companies, which are governed by a separate legal framework.  Specifically, Insurance

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

Code § 11580.24 (a) defines a "personal vehicle sharing program" such as Turo as "a legal entity qualified to do business in the State of California engaged in the business of facilitating the sharing of private passenger vehicles for noncommercial use by individuals within the state"; and (b) explains that private cars shared through such programs are not commercial vehicles.  Moreover, this law requires personal vehicle sharing programs like Turo to provide auto insurance that covers vehicles while they are being shared, relieving owners of this responsibility.  *Id.* § 11580.24(c)(1).

43.     The National Resources Defense Council, the Environmental Defense Fund, the Sierra Club, the City of Sacramento, the American Planning Association, California Chapter, Community Action to Prevent Asthma, and the Consumer Attorneys of California supported the passage of this law—many of them because of the environmental or consumer-choice benefits of car sharing programs like Turo.

44.     Consistent with this provision of California insurance law, other aspects of California law also make plain that Turo, an online platform allowing car owners to share their personal vehicles with guests, is not a rental car company:[7]

(a)     The California Vehicle Code defines a "rental car company" as "a person or entity in the business of renting passenger vehicles to the public in California." Cal. Veh. Code § 11752(e).

(b)     The California Civil Code defines a "rental company" as "a person or entity in the business of renting passenger vehicles to the public."  Cal. Civ. Code § 1939.01(a).

(c)     The California Insurance Code defines a "rental car company" as "any person in the business of renting vehicles to the public."  Cal. Ins. Code § 1758.89.

45.     These statutes show that a rental car company rents cars to customers and a personal vehicle sharing program is something distinct—i.e., a platform that

---

[7]  Turo's Users are also not rental car companies.  They are instead individuals empowered by California Insurance Code § 11580.24 to earn income from an otherwise idle asset without operating as commercial entities.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

"facilitat[es] the sharing of private passenger vehicles for noncommercial use."  As such, Turo does not meet the statutory definition of a rental car company.  Indeed, its business model provides consumers with a far more appealing alternative to them.

46.    Other governmental and private actors agree.  For example, Oregon and Washington passed similar car sharing laws to California's and Maryland just passed a peer-to-peer car sharing statute which makes clear platforms like Turo are not considered rental car companies.  Similarly, credit card companies and personal insurance providers that offer protections to rental car companies' customers regularly deny such coverage to Turo Users because Turo is not a rental car company.  And the United States Department of Transportation has stated that "peer-to-peer carsharing" programs are distinct from rental car companies.[8]

**The City Cannot Charge Turo the LAX Facilities Charge Under California Law**

47.    Consistent with the will of the rental car companies, the City has demanded that Turo obtain a rental car company permit and pay the LAX Facility Charge for each car share where Turo's Users decide to meet at or near LAX.  But the City cannot require Turo, a website and app, to apply for such a permit or pay such charges.

48.    The California Government Code allows airports to impose this type of charge on rental car companies, but does not permit forcing these charges on other types of entities.  *See, e.g.*, Cal. Gov't Code §§ 50474.1, 50474.3.

49.    The City would charge Turo and its Users between $7.50 and $37.50 per transaction ($7.50 per day that the car is used, up to five days).  LAX has made public statements asserting that California Government Code § 50474.3 authorizes it to charge the LAX Facilities Charge to fund the development of the Consolidated Rent-a-Car Facility.

---

[8] *See* Shared Mobility, *supra* note 8 at 10, 13-16 (defining carsharing as a separate category from "Car Rental").

**50.**    The LAX Facilities Charge could be authorized by California Government Code § 50474.3, as to certain entities.  That provision reads, in part:  "Any airport may require rental companies to collect an alternative customer facility charge, as defined in Section 50474.21, under the following conditions. . . ."  The statute goes on to strictly limit this fee to the amount necessary to recoup the costs of constructing a consolidated rental car facility—requiring an airport to periodically provide audits to this end to the state legislature.  Cal. Gov't Code § 50474.3(b).

**51.**    But Turo is not a "rental company," which California Civil Code § 1939.01(a) defines as "a person or entity in the business of renting passenger vehicles to the public."  Turo is a website that facilitates peer-to-peer car sharing, so California Government Code § 50474.3 does not authorize the City to charge Turo and its Users this fee.

**52.**    Moreover, the LAX Facilities Charge is not reasonably connected or rationally related to any cost LAX incurs as a result of Turo Users meeting at the airport, since Users do not require an expensive Consolidated Rent-A-Car Center or transportation thereto.  Nor is the LAX Facilities Charge a reasonable or fair approximation of any benefit, service, or good that LAX provides to Turo and its Users; instead, it would unjustly require Users to finance infrastructure they never benefit from.  As Turo has abolished the need for rental car counters, expensive car lots, and the transit infrastructure needed to connect the two, it makes no sense to force Turo and its Users to pay to keep outdated rental car companies in business.

**53.**    No other California statute authorizes an airport to regulate or impose charges on users of a personal vehicle sharing program like Turo, or requires such entities, which operate only online (not at the airport) to pay charges to the airport.

**The City's Demands Violate Section XIII C of the California Constitution**

**54.**    The City demands that Turo apply for a rental car company permit and that Turo and its Users pay a Gross Receipts Charge of, on information and belief, 10 percent of the total amount of each reservation plus an LAX Facilities Charge of $7.50–$37.50

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

anytime they meet at LAX.  As above, Turo and its Users cannot legally be subject to either of these charges.

**55.**    Moreover, the application of the Gross Receipts Charge and LAX Facilities Charge to Turo and its Users is a violation of Article XIII C of the California Constitution, enacted by Proposition 218 and amended by Proposition 26.

**56.**    In 1996, California voters passed Proposition 218, which required local governments to get voter approval before enacting any new taxes.  For the next two decades, local governments bypassed this requirement by reframing new taxes as "fees" or "assessments" that did not require voter approval.  California's voters rebuffed this abuse and strengthened taxpayer protections by passing Proposition 26 in 2010.

**57.**    California voters stated their purpose in the first section of Proposition 26. That section, labeled "Findings and Declarations of Purpose of the People of the State of California," provides as follows:

> Fees couched as "regulatory" but which exceed the reasonable costs of actual regulation or are simply imposed to raise revenue for a new program and are not part of any licensing or permitting program are actually taxes and should be subject to the limitations applicable to the imposition of taxes.  []  In order to ensure the effectiveness of these constitutional limitations, this measure also defines a 'tax' for state and local purposes so that neither the Legislature nor local governments can circumvent these restrictions on increasing taxes by simply defining new or expanded taxes as "fees."

**58.**    Under this new constitutional language, any "levy, charge, or exaction" is a tax unless it falls within one of seven narrowly defined exceptions.  This new regime has significantly expanded voters' ability to veto arbitrary taxes.  Under Proposition 26, it is the burden of the taxing authority to prove an exception applies.  The people must approve, by vote, any means of raising revenue that is a tax.

**59.**    The Gross Receipts Charge as it is applied to Turo and its Users does not fall within any of the seven exceptions enumerated in Article XIII C, Section 1(e).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

**60.**     As relevant here, a local government needs voter approval to charge a fee for a "benefit," "privilege," "service," or "product" unless it can prove the fee is (1) "no more than necessary to cover the reasonable costs of the governmental activity" and (2) "that the manner in which those costs are allocated to a payor bear[s] a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." The City's attempt to levy the Gross Receipts Charge on Turo and its Users without voter approval clearly runs afoul of these requirements.

**61.**     This is so because the Gross Receipts Charge would far exceed the costs LAX incurs as a result of Turo Users meeting at the airport. In fact, the Gross Receipts Charge is not reasonably connected or rationally related to any cost incurred by the airport to support Turo and its Users. For these same reasons, the Gross Receipts Charge is also not a reasonable or fair approximation of any benefit, service, or good that LAX provides to Turo and its Users.

**62.**     Rather, the Gross Receipts Charge would simply be a new stream of revenue for the City that comes without additional cost or burden to the LAX airport. Remarkably, the Gross Receipts Charge would demand of Turo and its Users exorbitant charges merely for the right to meet at or near the airport.

**63.**     Meanwhile, the payments that the City demands of other similar entities, including TNCs like Uber and Lyft, and taxi and limousine companies, are orders of magnitude lower. (Uber and Lyft riders pay $4, taxis pay $4 per trip, and limousines pay $5 per trip.) There is no reason for this discrepancy, particularly given that taxis require dedicated lanes, staging areas, LAX personnel to coordinate passenger pickup, and a ticketing booth that tracks rides. Turo Users spend no more time at the curb than other consumers or providers of ground transportation at LAX.

**64.**     Applying the Gross Receipts Charge to Turo and its Users would create a new tax that postdates Proposition 26. There is no ordinance, regulation, or LAX practice of charging an online platform like Turo and its Users a tax of this kind that predates November 2, 2010.

Cooley LLP
Attorneys At Law
San Francisco

17.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

**65.** The application of the rental car permit regime to Turo and its Users, including the accompanying Gross Receipts Charge, constitutes an imposition, extension, or increase of a tax and may also constitute a change in methodology with regard to the charging of a tax. Because these acts took place only after November 2, 2010, they are subject to Article XIII C, Section 2 of the California Constitution.

**66.** LAX publishes a set of "Ground Transportation Rules and Regulations" of its own design ("LAX Rules").[9]

**67.** On information and belief, the LAX Rules first defined the term "Rental Car Company" long after November 2, 2010. Only in 2016 was the term defined to include peer-to-peer car sharing companies:

> Any business that, directly or indirectly, provides, procures and/or brokers rental vehicles as part of its business and/or conducts, facilitates, and/or manages vehicle rental activities as part of its business. This includes, but is not limited to, traditional rental car businesses, brokers for car rental businesses, rental car delivery companies, peer-to-peer car rental businesses and car sharing businesses.

**68.** This amendment, made without any consultation with, or involvement from, the peer-to-peer car sharing industry, was intended to contort the plain language and statutory definition of a rental car company to purportedly reach (and thereby to impose unconstitutional taxes upon) entities that fall well outside of the rental car regulatory regime, including Turo and other online platforms. Before this revision to the Rules and Regulations, LAX itself did not consider Turo to be a rental car company subject to the rental car permitting regime and associated charges.

**69.** LAX has not provided to Turo, and on information and belief, Turo alleges LAX has not conducted, any analysis justifying application of the Gross Receipts

---

[9] The current LAX Rules and Regulations are posted at https://www.lawa.org/ LAXGTRulesRegs (last visited July 11, 2018).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Charge to Turo or other Personal Vehicle Sharing Programs or assessing the costs allegedly incurred in connection with Turo Users exchanging cars at or near LAX.

**70.** The City of Los Angeles has not sought or received voter approval for these taxes.

**71.** Because LAX has failed to abide by the procedures required by Article XIII C, Section 2, LAX's application of the Gross Receipts Charge to Turo and its Users is unlawful.[10]

**72.** In addition to violating the California Government Code, the LAX Facilities Charge also violates Article XIII C of the California Constitution, enacted by Proposition 218 and amended by Proposition 26.

**73.** Like the Gross Receipts Charge, the LAX Facilities Charge as it is applied to Turo and its Users also does not fall within any of the seven exceptions enumerated in Article XIII C, Section 1(e) of the California Constitution. The charge does not cover any service or privilege that LAX provides to Turo, and would require Turo and its Users to pay $7.50–$37.50 per transaction.

**74.** On information and belief, the LAX Facilities Charge was only promulgated by LAX in 2017.

**75.** The application of the rental car permit regime to Turo and its Users, including the accompanying LAX Facilities Charge, constitutes an imposition, extension, or increase of a tax and may also constitute a change in methodology with regard to the charging of a tax. Because these acts took place only after November 2, 2010, they are subject to the limitations of Article XIII C, Section 2 of the California Constitution.

**76.** LAX has not provided to Turo, and on information and belief, Turo alleges LAX has not conducted, any analysis justifying application of the LAX Facilities

---

[10] If the Gross Receipts Charge could be termed a fee, it would still be unlawful under California law because it is not reasonable, fair, or proportional.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

Charge to Turo or other Personal Vehicle Sharing Programs or assessing the costs allegedly incurred in connection with Turo Users exchanging cars at or near LAX.

**77.**     The City of Los Angeles has not sought or received voter approval for this tax.

**78.**     Because the City has failed to abide by the procedures required by Article XIII C, Section 2, the City's application of the LAX Facilities Charge to Turo and its Users is unlawful.

**The Gross Receipts and LAX Facilities Charges Violate**

**the "Dormant" Commerce Clause**

**79.**     The Gross Receipts and LAX Facilities Charges pose an undue burden on interstate commerce; they are not based on any fair approximation of Turo's and its Users' use of LAX's services or facilities, they are excessive in relation to the benefits conferred on Turo and its Users by LAX, and they discriminate against interstate commerce.   Thus, these charges violate Article I, Section 8 of the United States Constitution pursuant to 42 U.S.C. § 1983, as applied to Turo and its Users.   To the extent the LAX Rules purport to authorize Turo's treatment as a rental car company (including these charges), they are unconstitutional as applied to Turo.

**80.**     As discussed in detail above, these charges are not a fair approximation of any benefit, good, or service used by Turo and its Users.   Turo Users do not benefit from or rely on other airport facilities and services like LAX's proposed Consolidated Rent-a-Car Facility.

**81.**     Moreover, the City demands only a fractional amount from TNCs, taxi companies, and limousine companies that use airport property in virtually the same manner as Turo, further demonstrating that the Gross Receipts and LAX Facilities Charges are disproportionate and excessive.

**82.**     Moreover, the majority of Turo's Users who arrange to meet a Turo car owner at LAX arrive from out-of-state and have pre-arranged their Turo booking before

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

arriving, further illustrating that the Gross Receipts and LAX Facilities Charges burden interstate commerce.

83.     The City is acting in its regulatory capacity, not in a capacity as a market participant.  The City imposes the Gross Receipts and LAX Facilities Charges on a wide variety of businesses, including all peer-to-peer car sharing companies, and not merely on businesses that are "business partners" of the City (Turo does not concede that the City even has any business partners in this context).  The City has a monopoly over who is permitted to conduct business at LAX.  The City's conduct is subject to dormant commerce clause scrutiny.

**The Gross Receipts and LAX Facilities Charges Violate**

**the Equal Protection Clause**

84.     The City's demands that Turo and its Users pay exorbitant charges also violate their rights to fair and equal treatment under the equal protection clauses of the Fourteenth Amendment to the United States Constitution (pursuant to 42 U.S.C. § 1983) and Article I, Section 7 of the California Constitution.  The City violates these constitutional provisions by intentionally treating Turo and its Users differently than other similarly situated companies and their users without a rational basis for doing so. To the extent the LAX Rules purport to authorize Turo's treatment as a rental car company (including these charges), they are unconstitutional as applied to Turo.

85.     Specifically, the City violates Turo's and its Users' right to equal protection under the law by intentionally levying charges on Turo and its Users that are far in excess of the charges that it demands from TNCs like Uber and Lyft, whose users—like Turo's—only use LAX property for user pick-ups and drop-offs and do not benefit from or rely on other airport facilities and services like LAX's proposed Consolidated Rent-a-Car Facility.  Like Turo, these companies are also online matchmaking platforms that allow users to coordinate pick-ups and drop-offs on or near airport premises via mobile and web-based applications.  Despite these similarities, the City only charges $4 per trip to Uber and Lyft and their users—a mere fraction of the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

LAX Facilities Charge and 10 percent Gross Receipts Charge that LAX seeks to recover from Turo and its Users.  Uber and Lyft also make use of staging areas and LAX even provides them designated curbside space for pickups—provisions not given to Turo or its Users.

86.     Likewise, the City also violates Turo's and its Users' right to equal protection by levying charges far in excess of those it collects from taxis and limousine companies and their users.  In fact, taxis and limousines meet users curbside and require a staging area, yet pay pennies on the dollar compared to what the City would charge Turo and its Users (limousines pay $5 per trip and taxis pay $4).  Indeed, taxis and their users impose a substantially greater burden on LAX infrastructure than Turo and its Users, as LAX provides taxis with dedicated lanes, staging areas, LAX personnel to coordinate passenger pickup, and a ticketing booth that tracks rides.

87.     The City can offer no rational basis for this disparate treatment.  On the contrary, the City has acted with animus towards Turo and with the improper motive of protecting the interests of large multi-national rental car companies, to the detriment of Turo and local taxpayers.  On information and belief, LAX has colluded with rental car companies that have a strong desire to misclassify Turo as a rental car company and that have zealously campaigned to try to achieve this end.

88.     Accordingly, the City's attempt to impose these disparate charges on Turo and its Users violates their constitutional rights to equal protection under the law.

### Turo's Willingness to Cooperate with LAX

89.     The City cannot lawfully impose rental car company permitting requirements and related charges on Turo and its Users.  Despite this fact, Turo has long been willing to cooperate with LAX to arrive at a new constitutional permitting regime appropriate for the unique model of personal vehicle sharing programs.  Turo has always sought to work with airports cooperatively to devise a solution that works for its new innovative business model.  Turo brings this lawsuit now only because LAX has

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

refused to negotiate in good faith, demanding instead that Turo submit to an unlawful permitting regime.

90.    Turo would greatly prefer cooperation over litigation.  Turo has sought to negotiate an appropriate car sharing permit with LAX—including through good faith outreach from its CEO, Andre Haddad, but its efforts have been rebuffed at every turn.

91.    LAX has instead sent Turo cease-and-desist letters, ordering Turo to cease any activity at LAX or apply for a permit that makes no sense for the peer-to-peer car sharing industry.  (*See* Exs. 1 and 2 (alleging, *inter alia*, violations of Los Angeles Administrative Code § 171.02(b)).)  The City has threatened legal action against Turo if Turo refuses to submit to the unlawful fees associated with this permit.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

92.    Turo repeats and realleges each and every foregoing allegation contained herein, as if said allegations were set forth in full.

93.    As alleged herein, an actual and justiciable controversy now exists between Turo and the City concerning whether Turo can be held responsible for alleged violations of the LAX Rules and Los Angeles Administrative Code § 171.02(b) allegedly committed by Turo and its Users—namely the conduct of Turo Users meeting at or near LAX.

94.    Turo is an interactive computer service that provides a website and app-based platform.

95.    Turo's Users provide user content on the Turo platform, including content through which Turo's Users decide to meet at LAX.  In this way, Turo's Users are information content providers.

96.    The City asserts that Turo Users meeting at LAX to exchange vehicles do so in violation of the LAX Rules and Los Angeles Administrative Code.

97.    The City would hold Turo liable for the actions of its Users, specifically posting on Turo their agreement to exchange vehicles at LAX and their subsequent

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

meeting on or near LAX premises to consummate those transactions.  LAX would hold Turo liable because Turo publishes the content that results in these meetings and has threatened to take legal action against Turo.

98.    Turo is immune from this asserted liability by virtue of Section 230 of the federal Communications Decency Act, 47 U.S.C. § 230.

99.    Turo cannot be held liable by the City for alleged violations of the LAX Rules and the Los Angeles Administrative Code that allegedly result from the meeting of Turo Users at LAX.

100.    Turo cannot be held liable by the City for alleged violations of California Business and Professions Code, § 17200 *et seq.* allegedly resulting from the meeting of Turo Users at LAX.

101.    Turo cannot be held liable by the City for alleged violations of any other state or federal statutory or common law claim stemming from publication of User content that leads to the exchange of cars at LAX.

102.    This issue is properly resolved by a declaration from this Court.

103.    Turo seeks a declaratory judgment adjudicating this controversy pursuant to 28 U.S.C. § 2201.

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

104.    Turo repeats and realleges each and every foregoing allegation contained herein, as if said allegations were set forth in full.

105.    As alleged herein, an actual and justiciable controversy now exists between Turo and the City concerning LAX's authority to regulate and treat Turo and its Users as rental car companies and to impose charges on Turo and its Users that apply only to rental car companies.

106.    Turo and its Users are not rental car companies under California law.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

**107.** Turo and its Users cannot be made to pay charges pertinent to rental car companies, including but not limited to those identified in California Government Code § 50474.3 and § 50474.21.

**108.** The City has no statutory or regulatory basis that is valid under the United States and California Constitutions for compelling Turo and its Users to pay the LAX Facilities Charge or Gross Receipts Charge, or obtain a rental car company permit.

**109.** This issue is properly resolved by a declaration from this Court.

**110.** Turo seeks a declaratory judgment adjudicating this controversy pursuant to 28 U.S.C. § 2201.

### THIRD CAUSE OF ACTION
### (Declaratory Relief)

**111.** Turo repeats and realleges each and every foregoing allegation contained herein, as if said allegations were set forth in full.

**112.** As alleged herein, an actual and justiciable controversy now exists between Turo and the City concerning whether LAX's attempt to levy the Gross Receipts Charge and LAX Facilities Charge, to the extent the latter is applicable to Turo and its Users at all, is unlawful in that the Gross Receipts Charge and LAX Facilities Charge constitute taxes not approved by voters.

**113.** The City cannot charge Turo and its Users these taxes without voter approval.

**114.** This issue is properly resolved by a declaration from this Court.

**115.** Turo seeks a declaratory judgment adjudicating this controversy pursuant to 28 U.S.C. § 2201.

### FOURTH CAUSE OF ACTION
### (Declaratory Relief)

**116.** Turo repeats and realleges each and every foregoing allegation contained herein, as if said allegations were set forth in full.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

**117.**   As alleged herein, an actual and justiciable controversy now exists between Turo and the City concerning the "dormant" commerce clause embodied in Article I, Section 8 of the United States Constitution (pursuant to 42 U.S.C. § 1983), and whether the Gross Receipts and LAX Facilities Charges that the City seeks to recover from Turo and its Users constitute an undue burden on interstate commerce, are not based on a fair approximation of the services and facilities used by Turo and its Users, and are excessive in relation to the benefits conferred upon them by LAX.

**118.**   The City cannot impose unconstitutional charges that violate the "dormant" commerce clause on Turo and its Users.  For this reason, neither Turo nor its Users need to pay the Gross Receipts and LAX Facilities Charges pertinent to rental car companies.

**119.**   This issue is properly resolved by a declaration from this Court.

**120.**   Turo seeks a declaratory judgment adjudicating this controversy pursuant to 28 U.S.C. § 2201.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief)**

**121.**   Turo repeats and realleges each and every foregoing allegation contained herein, as if said allegations were set forth in full.

**122.**   As alleged herein, an actual and justiciable controversy now exists between Turo and the City concerning whether LAX has violated Turo's and its Users' rights to equal protection under the Fourteenth Amendment to the United States Constitution (pursuant to 42 U.S.C. § 1983) and Article I, Section 7 of the California Constitution by intentionally or purposefully treating Turo and its Users differently from other similarly-situated companies, including TNCs, taxi and limousine companies, and their users, without any rational basis for doing so.  The City's actions further exhibit improper motive and collusion with large multi-national rental car companies.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

123.   The City cannot intentionally or purposefully subject Turo to disparate treatment without a rational basis for doing so.  Thus, neither Turo nor its Users need to pay the Gross Receipts and LAX Facilities Charges pertinent to rental car companies.

124.   This issue is properly resolved by a declaration from this Court.

125.   Turo seeks a declaratory judgment adjudicating this controversy pursuant to 28 U.S.C. § 2201.

### PRAYER FOR RELIEF

**WHEREFORE**, Turo respectfully requests that this court:

1.     Issue a declaratory judgment that Turo cannot be held liable by the City for alleged violations of the LAX Rules and the Los Angeles Administrative Code that allegedly result from the meeting of Turo Users at LAX;

2.     Issue a declaratory judgment that Turo cannot be held liable by the City for alleged violations of California Business and Professions Code, § 17200 *et seq.* allegedly resulting from the meeting of Turo Users at LAX;

3.     Issue a declaratory judgment that Turo cannot be held liable by the City for alleged violations of any other state or federal statutory or common law claim stemming from publication of User content that leads to the exchange of cars at LAX.

4.     Issue a declaratory judgment that Turo and its Users are not rental car companies under California law;

5.     Issue a declaratory judgment that Turo and its Users cannot be made to pay charges pertinent to rental car companies, including but not limited to those identified in California Government Code § 50474.3 and § 50474.21;

6.     Issue a declaratory judgment that that City cannot compel Turo and its Users to pay charges, including the Gross Receipts and LAX Facilities Charges, as rental car companies or be permitted as rental car companies;

7.     Issue a declaratory judgment that the imposition of the Gross Receipts Charge on Turo and its Users would constitute a tax that is unlawful without voter approval;

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27.

COMPLAINT OF TURO INC. FOR DECLARATORY
JUDGMENT AND OTHER RELIEF; 2:18-CV-6055

**8.** Issue a declaratory judgment that the imposition of the LAX Facilities Charge on Turo and its Users would constitute a tax that is unlawful without voter approval;

**9.** Issue a declaratory judgment that neither Turo nor its Users need to pay the Gross Receipts and LAX Facilities Charges because these charges violate the "dormant" commerce clause of the United States Constitution, as applied;

**10.** Issue a declaratory judgment that neither Turo nor its Users need to pay the Gross Receipts and LAX Facilities Charges pertinent to rental car companies because these charges violate the equal protection clauses of the Federal and California Constitutions, as applied;

**11.** Grant any and all appropriate injunctive relief, including but not limited to precluding the City from (a) compelling Turo to apply for a rental car company permit; and (b) prohibiting Turo and its Users from exchanging vehicles at or near the airport, or interfering with such exchanges, in the absence of such a permit;

**12.** Award Turo its fees and costs incurred herein; and

**13.** Grant such other and further relief as this Court should find just and proper.

## DEMAND FOR JURY TRIAL

Turo hereby demands a jury trial on all the issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: July 12, 2018                    COOLEY LLP


/s/ Matthew D. Brown
Matthew D. Brown

Attorneys for Plaintiff
TURO INC.

176760538