COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
BENJAMIN H. KLEINE (257225)
(bkleine@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile:  (415) 693-2222

Attorneys for Plaintiff TURO INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| TURO INC., | Case No.  2:18-CV-6055 |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TURO'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant. | Date:         November 5, 2018<br>Time:         10:00 a.m.<br>Courtroom:  8D<br>Judge:        Hon. Christina A. Snyder |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.    FACTUAL BACKGROUND ........................................................ 2

III.   LEGAL STANDARDS ............................................................ 4

IV.    ARGUMENT.................................................................... 4

    A.    The Court Has Subject Matter Jurisdiction over Turo's Complaint.......... 4

        1.    Turo has alleged an actual and justiciable controversy. ................. 5

        2.    Turo has Article III standing to bring its claims............................ 6

        3.    Turo's claims are ripe ........................................................ 7

            a.    Turo's claims are ripe under Article III. ............................. 7

            b.    Prudential ripeness factors do not warrant dismissal. .......... 8

    B.    Each of Counts II-V States a Claim for Relief. ......................................... 9

        1.    Turo has pled that the City lacks authority to treat it as a rental company subject to a concession permit. ........................... 9

        2.    Turo has pled that the Disputed Charges are unlawful taxes ...... 11

            a.    The City seeks to "impose" the Disputed Charges. ........... 12

            b.    The Disputed Charges are not entrance or use charges...... 13

        3.    Turo alleges that the City's permitting scheme violates the DCC. ...................................................................................... 14

            a.    Turo has pled an as-applied DCC claim under *Evansville*.................................................................... 14

            b.    The Anti-Head Tax Act does not bar Turo's DCC claim. ................................................................................ 17

        4.    Turo has pled that the City's classification of Turo violates equal protection........................................................................ 18

            a.    The City invokes the wrong pleading standard.................. 18

            b.    Turo has stated a class-of-one equal protection claim. ...... 20

    C.    Turo Has Pled a Justiciable Claim for CDA 230 Declaratory Relief..... 22

        1.    Declaratory relief is available under CDA 230 ......................... 22

        2.    Turo has pled each element of a CDA 230 declaratory claim....... 24

V.     CONCLUSION ............................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.J. Cal. Mini Bus, Inc. v. Airport Comm'n of City & Cty. of San Francisco*,
148 F. Supp. 3d 904 (N.D. Cal. 2015)........................................................ 19

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)............................................................................. 8

*Airbnb, Inc. v. City & Cty. of San Francisco*,
217 F. Supp. 3d 1066 (N.D. Cal. 2016)..................................................... 25

*Alamo Rent-a-Car, Inc. v. Sarasota-Manatee Airport Auth.*,
906 F.2d 516 (11th Cir. 1990) .................................................... 15, 17, 18

*Alamo Rent-a-Car v. Palm Springs*,
955 F.2d 30 (9th Cir. 1991) ........................................................ 15, 17, 18

*Am. Trucking Ass'ns v. N.Y. State Thruway Auth.*,
199 F. Supp. 3d 855 (S.D.N.Y. 2016) .......................................... 15, 16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................. 4

*Backpage.com, LLC v. Hoffman*,
No. 13-3952, 2013 WL 4502097 (D.N.J. Aug. 20, 2013)........................... 23

*Backpage.com, LLC v. McKenna*,
881 F. Supp. 2d 1262 (W.D. Wash. 2012) ............................................. 22

*Barnes v. Yahoo! Inc.*,
570 F.3d 1096 (9th Cir. 2009) ........................................................ 23, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................ 4, 15

*Bishop Paiute Tribe v. Inyo Cty.*,
863 F.3d 1144 (9th Cir. 2017) ............................................................... 8

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
No. 14-1926, 2015 WL 12747820 (C.D. Cal. Mar. 30, 2015) ...................... 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

*Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*,
  567 F.3d 79 (2d Cir. 2009) ................................................................ 15, 16

*Brown v. Merlo*,
  8 Cal. 3d 855 (1973) .............................................................................. 20

*Cal. Farm Bureau Fed'n v. State Water Res. Control Bd.*,
  51 Cal. 4th 421 (2011) ............................................................................ 12

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ................................................................ 22

*City of Colton v. Am. Promotional Events*,
  614 F.3d 998 (9th Cir. 2010) .................................................................... 7

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .................................................................................... 6

*City of Oakland v. Burns*,
  46 Cal. 2d 401 (1956) .............................................................................. 13

*City of San Buenaventura v. United Water Conservation Dist.*,
  3 Cal. 5th 1191 (2017) ...................................................................... 13, 14

*Clinton v. New York*,
  524 U.S. 417 (1998) .................................................................................. 6

*Cohen v. Facebook*,
  252 F. Supp. 3d 140 (E.D.N.Y. 2017) .................................................... 25

*Consumer Data Indus. Ass'n v. King*,
  678 F.3d 898 (10th Cir. 2012) .................................................................. 8

*Cordi-Allen v. Conlon*,
  494 F.3d 245 (1st Cir. 2007) .............................................................. 18, 20

*Cty. Sanitation Dist. No. 2 v. Cty. of Kern*,
  127 Cal. App. 4th 1544 (2005) ................................................................ 13

*Dyroff v. Ultimate Software Grp., Inc.*,
  No. 17-5359, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) .................. 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Enterprise Leasing Co. v. Cty. of Wayne*,
  No. 98-1278, 1999 U.S. App. LEXIS 22992 (6th Cir. Sept. 14, 1999) ...... 15, 17, 18

*Esmail v. Macrane*,
  53 F.3d 176 (7th Cir. 1995) ............................................................................ 18

*Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*,
  405 U.S. 707 (1972).......................................................................14, 15, 17, 18

*Fed. Trade Comm'n v. LeadClick Media, LLC*,
  838 F.3d 158 (2d Cir. 2016) ......................................................................... 23

*Fields v. Twitter Inc.*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016)........................................................ 25

*Geinosky v. City of Chi.*,
  675 F.3d 743 (7th Cir. 2012) ....................................................................... 20

*Genesis Envtl. Servs. v. San Joaquin Valley Unified Air Poll. Control Dist.*,
  113 Cal. App. 4th 597 (2003) ...................................................................... 19

*GiveForward, Inc. v. Hodges*,
  No. 13-1891, 2015 WL 4716046 (D. Md. Aug. 6, 2015).......................... 22, 23

*Global Music Rights v. Radio Music License Comm.*,
  No. 16-9051, 2017 WL 3449606 (C.D. Cal. Apr. 7, 2017)........................... 4

*Golden v. Cal. Emergency Phys. Med. Grp.*,
  782 F.3d 1083 (9th Cir. 2015) ....................................................................... 8

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ....................................................................... 23

*Guru Nanak Sikh Soc'y v. Cty. of Sutter*,
  326 F. Supp. 2d 1128 (E.D. Cal. 2003) ...................................................... 19

*Hagman v. Meher Mount Corp.*,
  215 Cal. App. 4th 82 (2013) ........................................................................ 17

*Heller v. Doe by Doe*,
  509 U.S. 312 (1993)...................................................................................... 19

*Homeaway.com, Inc. v. City of Santa Monica*,
  No. 16-6641, 2018 WL 3013245 (C.D. Cal. June 14, 2018) ................... 25

*Jane Doe No. 1 v. Backpage.com*,
  817 F.3d 12 (1st Cir. 2016)........................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

*Jones v. Modesto*,
408 F. Supp. 2d 935 (E.D. Cal. 2005) .................................................... 18

*Kaahumanu v. Haw.*,
682 F.3d 789 (9th Cir. 2012) ................................................................. 14

*Kawaoka v. City of Arroyo Grande*,
17 F.3d 1227 (9th Cir. 1994) ................................................................. 19

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ............................................................... 24

*La Park La Brea A LLC v. Airbnb, Inc.*,
285 F. Supp. 3d 1097 (C.D. Cal. 2017) ................................................. 24

*Lil' Man in the Boat, Inc. v. City & Cty. of S.F.*,
No. 17-0904, 2017 WL 3129913 (N.D. Cal. July 24, 2017) ............ 15, 16

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007).................................................................................. 5

*Merrion v. Jicarilla Apache Tribe*,
455 U.S. 130 (1982)................................................................................ 17

*Metric Man, Inc. v. Unemp't Ins. Appeals Bd.*,
59 Cal. App. 4th 1041 (1997) ................................................................ 10

*Montana Shooting Sports Ass'n v. Holder*,
727 F.3d 975 (9th Cir. 2013) ............................................................... 6, 7

*N. Grp. LLC v. Haw. Cty. Liquor Comm'n*,
681 F. Supp. 2d 1209 (D. Haw. 2009).................................................... 20

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ............................................................ 22, 24

*Nw. Airlines, Inc. v. Cty. of Kent*,
510 U.S. 355 (1994)................................................................................ 15

*Park Shuttle N' Fly, Inc. v. Norfolk Airport Auth*,
No. 03-0461, 2004 U.S. Dist. LEXIS 28116 (E.D. Va. Feb. 6, 2004) ................... 21

*People v. Tran*,
61 Cal. 4th 1160 (2015) ......................................................................... 10

*People v. Turo Inc.*,
No. 18-563803 (S.F. Super. Ct. Jul. 9, 2018) ....................... 4, 15, 16, 19, 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*People v. Watson,*
  8 Cal. App. 5th 496 .......................................................................... 18

*Phila. Indem. Ins. Co. v. Montes-Harris,*
  40 Cal. 4th 151 (2006) ..................................................................... 10

*Principal Life Ins. Co. v. Robinson,*
  394 F.3d 665 (9th Cir. 2005) .............................................................. 9

*Publius v. Boyer-Vine,*
  237 F. Supp. 3d 997 (E.D. Cal. 2017) ............................................... 23

*Reid v. City of San Diego,*
  24 Cal. App. 5th 343 (2018) .............................................................. 12

*Sacramento Cty. Retired Emps. Ass'n v. Cty. of Sacramento,*
  No. 11-0355, 2012 WL 1082807 (E.D. Cal. Mar. 31, 2012) .............. 19

*Schmeer v. County of Los Angeles,*
  213 Cal. App. 4th 1310 (2013) .......................................................... 12

*Scott v. Pasadena Unified Sch. District,*
  306 F.3d 646 (9th Cir. 2002) ........................................................... 6, 7

*Sinclair Paint Co. v. State Bd. of Equalization,*
  15 Cal. 4th 866 (1997) ...................................................................... 12

*Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.,*
  655 F.2d 938 (9th Cir. 1981) .............................................................. 5

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ........................................................................ 6

*Squaw Valley Dev. v. Goldberg,*
  375 F.3d 936 (9th Cir. 2004) ............................................................. 21

*Stamas v. Cty. of Madera,*
  No. 09-0753, 2010 WL 2556560 (E.D. Cal. June 21, 2010) ............... 19

*Suitum v. Tahoe Reg'l Planning Agency,*
  520 U.S. 725 (1997) ............................................................................ 7

*Susan B. Anthony List v. Driehaus,*
  134 S. Ct. 2334 (2014) ..................................................................... 8, 9

*Tapalian v. Tusino,*
  377 F.3d 1 (1st Cir. 2004) .................................................................. 20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Trans World Airlines v. City & Cty. of S.F.*,
  228 F.2d 473 (9th Cir. 1955) ................................................................ 11

*Triple G Landfills, Inc. v. Bd. of Comm'rs of Fountain Cty.*,
  977 F.2d 287 (7th Cir. 1992) .................................................................. 9

*Village of Willowbrook v. Olech*,
  528 U.S. 562 (2000)............................................................... 18, 20, 22

*Vision Tech. Design & Mfg., Inc. v. Gen. Wire Spring Co.*,
  No. 07-0412, 2007 WL 2069945 (E.D. Cal. July 17, 2007) ...................... 5

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ................................................................ 23

**Constitutions**

Constitution of the State of California
  Article XI ........................................................................................... 11
  Article XIII C ...............................................................................*passim*

**Statutes**

United States Code
  28 U.S.C. § 2201.............................................................................. 5, 6
  47 U.S.C. § 230............................................................................*passim*
  49 U.S.C. § 40116.................................................... 1, 2, 14, 17, 18

California Civil Code
  § 1939.01 ........................................................................................... 10
  § 1939.17 ........................................................................................... 10

California Government Code
  § 50474.3 ...................................................................................... 10, 11

California Insurance Code
  § 1758.89 ........................................................................................... 10
  § 11580.24 ..................................................................................... 9, 10

California Vehicle Code
  § 9400.8 ............................................................................................. 13
  § 11752 ............................................................................................... 10

Los Angeles Municipal Code
  § 171.02 ...................................................................... 2, 23, 24, 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Other Authorities**

S. Rep. No. 93-12, 93rd Cong., 1st Sess. (1973), reprinted in 1973
   U.S.C.C.A.N. 1434 ................................................................................................ 17

Cooley LLP
Attorneys At Law
San Francisco

ix

Turo's Opp'n To Defendant's
Motion to Dismiss
(Case No. 2:18-cv-6055)

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Turo Inc. provides its users with an online platform to share their cars but does not own a fleet of cars and is not a rental car company under California law. Yet the City of Los Angeles ("City") asserts that Turo must obtain an on-airport rental car permit ("concession permit") because some Turo users exchange cars at or near Los Angeles International Airport ("LAX"). Turo's Complaint seeks relief from the City's rental car permitting scheme, which is unlawful as applied to Turo.

The City moves to dismiss under a grab bag of theories including Article III's case-or-controversy, standing, and ripeness requirements, claiming that it has not yet forced Turo to pay concession permit charges. But due to Turo's refusal to pay those unlawful charges, the City has sent multiple cease-and-desist letters indicating that it will take legal action, cited Turo's users exchanging cars at LAX, and represented to third parties that it intends to sue Turo, rendering this dispute ready for adjudication.

The City seeks dismissal of Turo's claim seeking a declaration that it cannot classify Turo as an on-airport rental car company, by misconstruing Turo to be arguing that the California Insurance Code, standing alone, prohibits this classification. Instead, Turo alleges that the concession permit imposes a charge that California law authorizes only for "rental companies." Because Turo does not meet the state law definition of that term, it cannot be compelled to pay the charge or obtain a concession permit.

The City next seeks dismissal of Turo's claim that, as applied to Turo, the disputed charges are unlawful taxes that have not received voter approval required under the California Constitution. However, the City is incorrect that the charges are exempt from the voter approval requirement: it cannot meet its burden to show, *inter alia*, that the charges merely cover its costs from users' car exchanges at LAX.

The City also argues that Turo's Dormant Commerce Clause ("DCC") claim fails, arguing that Turo has not alleged the elements of a DCC user fee challenge and that the Anti-Head Tax Act ("AHTA") preempts such claims. But Turo has alleged a DCC claim by alleging that the disputed charges do not fairly approximate its use of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

airport facilities and are excessive in relation to the benefits conferred. Nor does the AHTA address (let alone preempt) DCC challenges to ground transportation user fees.

The City seeks dismissal of Turo's Equal Protection Clause claim, claiming Turo has not refuted every possible basis on which LAX might theoretically classify Turo as an on-airport rental car company. This misstates the pleading standard, which Turo has met by alleging the City intentionally treats it unlike Transportation Network Companies ("TNCs") like Uber, which similarly use LAX, without rational basis.

The City finally contends that (1) a declaration of Communications Decency Act ("CDA") immunity is unavailable and (2) Turo has not pled that imposing liability on Turo would treat it as a publisher or speaker of users' content. But as the City tacitly admits, courts grant declarations of CDA immunity, consistent with the CDA's policy of immunizing platforms from liability for user content early in litigation. And Turo has alleged that since its only nexus to users' car exchanges at LAX is those users' prior communications on Turo's platform, imposing liability on Turo for alleged violations during those exchanges would treat Turo as a publisher or speaker of users' content.

The Court should deny the City's Motion to Dismiss in its entirety.

## II.   FACTUAL BACKGROUND

Turo provides an online car-sharing platform for personal car sharing by users ("Users"). (Complaint ("Compl.") ¶ 1, Dkt. 1.) Owners list cars on Turo for booking by Users seeking a car ("guests"). (*Id.*) Turo does not dictate the locations (if any) at which owners offer delivery, but some choose to deliver to LAX. (*Id.* ¶¶ 38-39.) Turo does not have a fleet of cars, and its platform eliminates the need for the infrastructure and overhead that rental car companies require. (*Id.* ¶¶ 1, 31, 34, 41, 52.) Yet the City has threatened legal action because Turo has not obtained a concession permit for ***rental cars*** in connection with Users' car exchanges at LAX. (*Id.* ¶ 5, Exs. 1-2.)

The City asserts that under Los Angeles Municipal Code § 171.02(b),[1] any person

---

[1] The City incorrectly threatened action under Los Angeles Administrative Code, § 171.02(b) (*id.*, Ex. 2 at 33), but its Motion clarifies that it intended to invoke the Los

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

engaged in "business or commercial activity" at LAX must be permitted. (*Id.*, Ex. 2 at 33.) It contends that as amended in 2016, the LAX "Ground Transportation Rules and Regulations" ("LAX Rules") define "Rental Car Company" to include "peer-to-peer car rental businesses and car sharing businesses." (*Id.* ¶¶ 67-68, Ex. 2 at 35.) And it insists that the correct rental car permit for Turo is a concession permit. (*Id.*, Ex. 2 at 33.) The City has repeatedly asserted to Turo and others that it will take legal action against Turo and has aggressively cited Users exchanging cars at LAX. *See* Section IV.A.1, *infra*.

A concession permit requires payment of the LAX Facilities Charge and the Gross Receipts Charge ("Disputed Charges"). (Compl. ¶¶ 6-7, 10.) The LAX Facilities Charge of $7.50 per day (up to $37.50) funds construction of a massive Consolidated Rent-a-Car Facility. (*Id.* ¶¶ 7, 10.) The Gross Receipts Charge is 10 percent per booking. (*Id.* ¶¶ 6, 54.) Thus, if a User shares her car at LAX for $500 for a one week trip, the City demands an eye-popping $87.50, i.e., a $50 Gross Receipts Charge and $37.50 LAX Facilities Charge. (*Id.* ¶ 8.) These charges may offset rental car companies' impact on LAX, but make no sense for Turo. (*Id.* ¶ 10.) Turo's Users' impact is virtually identical to users of TNCs like Uber and Lyft, which pay only $4 per trip to meet riders at LAX curbsides. (*Id.* ¶¶ 6-8, 10.) Limos ($4/trip) and taxis ($5/trip) also meet passengers curbside and pay far less than the City demands of Turo. (*Id.*)

Turo tried to avoid litigation, instead repeatedly seeking to meet with the City to develop a new permit that fit Turo's business model. (*Id.* ¶¶ 13, 89.) But the City rebuffed Turo and insisted on misclassifying it as a rental car company due to pressure from Enterprise and Hertz, which view Turo as an existential threat and exercise power over the City due to their sizable campaign donations, taxes, and fees. (*Id.* ¶¶ 15-20.)

Once Turo realized that legal action was inevitable unless it paid the Disputed Charges pursuant to a concession permit (*id.* ¶ 91), it filed its Complaint seeking these declarations to resolve the parties' controversy: (1) Turo is entitled to CDA immunity

Angeles Municipal Code. (*See* Mem. of Ps. & As. in Supp. of Mot. to Dismiss ("Mot.") at 2 n.1, Dkt. 20.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

from legal violations the City asserts based on Users' exchanges at LAX (*id*. ¶¶ 98-103); (2) Turo is not a rental company under California law, so it cannot be compelled to pay Disputed Charges authorized only for rental companies (*id*. ¶¶ 106-10); (3) under the California Constitution, Article XIII C, the Disputed Charges are unlawful taxes as applied because voters have not approved them (*id*. ¶¶ 112-15); (4) the Disputed Charges violate the DCC as applied because they do not fairly approximate Users' use of LAX facilities and are excessive in relation to the benefits that LAX confers (*id*. ¶¶ 117-20); and (5) imposing larger charges on Turo than on similarly-situated companies, without rational basis, violates equal protection (*id*. ¶¶ 122-25).[2]

## III.   LEGAL STANDARDS

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff must show subject matter jurisdiction under Article III's case or controversy clause, including both standing and ripeness. *Global Music Rights v. Radio Music License Comm.*, No. 16-9051, 2017 WL 3449606, at *3 (C.D. Cal. Apr. 7, 2017). In turn, a Rule 12(b)(6) motion to dismiss must be denied if the complaint states a "plausible" claim permitting a reasonable inference of the defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts treat all allegations as true and draw all reasonable inferences for the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A court cannot dismiss based on "disbelief of a complaint's factual allegations," even if recovery is very unlikely. *Id.*

## IV.   ARGUMENT

### A.   The Court Has Subject Matter Jurisdiction Over Turo's Complaint.

The City incorrectly seeks dismissal of Counts II-V (but not Count I, CDA immunity) for supposed lack of (1) an Article III "justiciable controversy" or

---

[2] San Francisco also has yielded to rental car industry pressure, suing Turo for not maintaining an inapposite rental car permit in connection with Users' exchanges at SFO. (*See* Turo Inc.'s Notice of Pendency of Other Actions or Proceedings, Dkt. 5.) In that action, the court overruled San Francisco's Demurrer to Turo's Cross-Complaint, which alleges that SFO's misclassification of Turo as a rental car company violates, *inter alia*, Article XIII C of the California Constitution, the DCC, and equal protection. *See* Declaration of Matthew D. Brown Attaching Unpublished Decision, Ex. A (*People v. Turo Inc.*, No. 18-563803 (S.F. Super. Ct. Jul. 9, 2018) (hereafter, "SF Order").)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

Declaratory Judgment Act "actual controversy"; (2) Article III standing; and (3) ripeness.  (*See* Mot. at 9-10.)

### 1.   Turo has alleged an actual and justiciable controversy.

The City contends that Turo has not alleged the required controversy, as it has not made Turo pay the Disputed Charges.  (Mot. at 9-10.)  Article III's "justiciable" case or controversy requirement and the Declaratory Judgment Act's "actual controversy" requirement are co-extensive.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 123, 126-27 (2007).  At the pleading stage, both requirements are met when the complaint alleges "a substantial controversy, . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *id.*, such as the plaintiff's "real and reasonable apprehension" of a suit.  *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir. 1981).  Courts find the "controversy" requirement satisfied by cease-and-desist letters, especially those threatening legal action.  *See, e.g.*, *Vision Tech. Design & Mfg., Inc. v. Gen. Wire Spring Co.*, No. 07-0412, 2007 WL 2069945, at *17, *22 (E.D. Cal. July 17, 2007) (actual controversy where cease-and-desist letter threatened to "seek all appropriate legal remedies" for disputed conduct); *see also Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, No. 14-1926, 2015 WL 12747820, at *5 (C.D. Cal. Mar. 30, 2015) (actual controversy where defendant sent letter demanding that plaintiff cease operations, ***even though*** it "did not expressly threaten litigation").

Even though Turo has not yet been forced to pay the Disputed Charges, it has alleged the required controversy due to its "real and reasonable apprehension" of suit.  *See Societe de Conditionnement*, 655 F.2d at 944.  On November 7, 2016, the City wrote to Turo that it was unlawfully "operating a vehicle rental business . . . providing direct access to the Central Terminal Area of [LAX]," which "is prohibited without a concession agreement."  (Compl., Ex. 1 at 30.)  On January 30, 2017, the City sent a second letter asserting that under the LAX Rules, Turo needed to obtain a rental car company permit.  (*Id.*, Ex. 2 at 35.)  And on April 3, 2017, the Los Angeles City

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

1    Attorney's Office advised Turo that as it did not have a "concession agreement," if it

2    did not "cease and desist it[s] operations inside LAX . . . *our office will take appropriate*

3    *legal action to prevent further activity by Turo inside LAX*." (*Id*., Ex. 2 at 34 (emphasis

4    added).)  Even as the City refused to meet with Turo to negotiate a permit, it advised

5    Enterprise that it was "pursuing litigation against Turo." (*Id*. ¶¶ 13, 16.)  And the City

6    aggressively cited Users exchanging cars at LAX, even impounding their cars. (*Id*.

7    ¶ 13.)  Thus, the Complaint presents a "justiciable" case or controversy under Article

8    III and an "actual controversy" under the Declaratory Judgment Act.

9                    **2.     Turo has Article III standing to bring its claims.**

10          The City argues that Turo lacks standing because it has not alleged an injury-in-

11   fact, since the Complaint does not allege that the City has "enforced its rights" to collect

12   the Disputed Charges. (Mot. at 10-12.)  To satisfy the injury-in-fact requirement, a

13   plaintiff must allege "an invasion of a legally protected interest" that is "concrete and

14   particularized" and "actual or imminent." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543

15   (2016).  The required injury exists where a plaintiff compelled to comply with a

16   licensing scheme would suffer an adverse economic impact from compliance. *See*

17   *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 980 (9th Cir. 2013) (rejecting

18   government's argument that declaratory plaintiff lacked standing to challenge licensing

19   scheme because he could obtain a license to conduct his business legally).[3]

20          The City does not even acknowledge this controlling principle, instead citing two

21   inapposite authorities. (*See* Mot. at 11-12.)  *Scott v. Pasadena Unified Sch. District*,

22   306 F.3d 646, 660-61 (9th Cir. 2002), held on summary judgment that plaintiffs lacked

23   standing to challenge a race-conscious admissions policy that had never been used and

24   would only be used if, in the future, a school became functionally segregated. And *City*

---

[3] More broadly, an injury-in-fact exists when a government decision harms the plaintiff's actual or probable economic interests. *See, e.g.*, *Clinton v. New York*, 524 U.S. 417, 431-33 (1998) (state had standing to challenge federal veto of legislation that would have permitted it to keep certain Medicaid funds, because of "probable economic injury resulting from [government actions] that alter competitive conditions").

*of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), held, after considering evidence, that a plaintiff who suffered an illegal use of force by police lacked standing for injunctive relief, where he did not face a "real and immediate threat" of future illegal use of force.

In contrast, Turo alleges that the City has applied its permitting scheme against Turo by (1) directing it to cease operations within LAX on pain of legal action; and (2) citing Users exchanging cars at LAX and impounding their cars. *See* Section IV.A.1, *supra*. Turo has further alleged that compliance with the permitting scheme (e.g., by paying the Disputed Charges) would injure its economic interests. (Compl. ¶ 14.) This satisfies the injury-in-fact requirement. *See, e.g.*, *Montana Shooting*, 727 F.3d at 980.

### 3. Turo's claims are ripe.

The City contends that Turo's claims are unripe because the City has not required that Turo pay the Disputed Charges, arguing that Turo can avoid paying such charges by obtaining an off-airport Non-Exclusive License Agreement ("NELA"). (Mot. at 12-13.) Ripeness doctrine includes both an Article III constitutional limitation and prudential considerations informing when a court may decline to exercise jurisdiction. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n.7 (1997). Whether based on Article III or prudential considerations, the City's challenge fails.

### a. Turo's claims are ripe under Article III.[4]

A declaratory judgment claim is ripe if a substantial controversy exists between parties having adverse legal interests that is of sufficient immediacy and reality to warrant a declaratory judgment—the "case or controversy" standard. *See City of Colton v. Am. Promotional Events*, 614 F.3d 998, 1004-05 (9th Cir. 2010); Section IV.A.1, *supra*. Turo's claims are ripe under Article III since it has alleged an enforcement threat based on the City's cease-and-desist letters and other enforcement steps.[5] *See* Section

---

[4] Article III ripeness analysis is nearly co-extensive with injury-in-fact standing analysis, further showing that Turo's claims are ripe. *See Scott*, 306 F.3d at 662 ("[T]he ripeness inquiry merges almost completely with standing."); Section IV.A.2, *supra*.

[5] The City cannot defeat ripeness by arguing that Turo can avoid the Disputed Charges by obtaining a $6,000/month NELA. (*See* Mot. at 4-5.) As the City concedes, this would require Users to take an LAX-operated shuttle to the Remote Rental Car Depot,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

IV.A.1, *supra*; *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 907 (10th Cir. 2012) (ripeness not obstacle to pre-enforcement challenge; plaintiff "should not be required to await and undergo [enforcement] as the sole means of seeking relief").

### b.   Prudential ripeness factors do not warrant dismissal.

A prudential ripeness inquiry considers whether (1) the issues are fit for judicial decision; and (2) the parties will suffer hardship absent such decision. *Golden v. Cal. Emergency Phys. Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015). The Supreme Court has questioned the "continued vitality" of this doctrine, explaining that where Article III injury-in-fact exists, a prudential ripeness dismissal conflicts with a federal court's "virtually unflagging . . . obligation to hear and decide cases within its jurisdiction[.]" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014). Even if the doctrine retains any vitality, the Ninth Circuit has recently reiterated that courts have discretion whether to consider prudential ripeness, *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1154 (9th Cir. 2017), and has declined to apply the doctrine in certain civil cases not requiring review of an "administrative action[]." *See Golden*, 782 F.3d at 1087.

The City incorrectly invites this Court to undertake a prudential ripeness analysis (Mot. at 12-13), invoking *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), which recognized courts' reluctance to adjudicate "administrative determinations" involving "abstract disagreements over administrative policies" "until an administrative decision has been formalized and its effects felt . . . ." *Id*. at 148-50. The *Abbott* Court nonetheless concluded that pre-enforcement judicial review of a "purely legal" question posed by a "final agency action" was prudentially ripe. *Id*. The City concedes that prudential ripeness was meant to apply in the "context of administrative actions," (Mot. at 12), but does not identify any such administrative action here. And the City itself cites a Ninth Circuit case that reversed a district court's application of *Abbott* to a

---

from which Turo would have to transport them to an off-site lot. (*Id*.) This would be inconsistent with Turo's business model, as the City has admitted in its cease-and-desist letter asserting that Turo requires a concession permit. (Compl., Ex. 2 at 33.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

contract dispute, as there was no administrative action. (*Id*. at 13 (citing *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 670 (9th Cir. 2005).)

It is not appropriate for the Court to apply the prudential ripeness doctrine here, especially given the Supreme Court's assessment that it lacks "continuing vitality," *see Susan B. Anthony List*, 134 S. Ct. at 2347. Even were a prudential ripeness analysis appropriate, the Complaint presents legal claims fit for adjudication that, absent judicial intervention, would cause hardship. *See* Sections IV.A.1-2, *supra*. For instance, courts find the fitness and hardship requirements met where a plaintiff challenges the validity of an ordinance requiring a permit without applying for that permit. *See Triple G Landfills, Inc. v. Bd. of Comm'rs of Fountain Cty.*, 977 F.2d 287, 289 (7th Cir. 1992). Thus, prudential ripeness does not warrant dismissal given that the City has threatened enforcement action if Turo does not comply with the challenged permitting scheme.

The Court should deny Rule 12(b)(1) dismissal of Turo's Complaint.

**B.    Each of Counts II-V States a Claim for Relief.**

**1.    Turo has pled that the City lacks authority to treat it as a rental company subject to a concession permit.**

Turo seeks a declaration that the City cannot require it to obtain a concession permit and pay the Disputed Charges. (Compl. ¶¶ 104-10.) The City misconstrues Turo's basis for seeking this declaration. Turo does not claim that classifying Turo as an on-airport rental company violates *only* Insurance Code § 11580.24. (*See* Mot. at 14.) Rather, Turo alleges that the concession permit imposes the LAX Facilities Charge, which state law authorizes only for a "rental company"; since Turo is not one, the City cannot lawfully require Turo to obtain a concession permit. (Compl. ¶¶ 47-51.) Nor do the City's home rule powers alter this result. (*See* Mot. at 14.) The City relies on a state statute for authorization to charge the LAX Facilities Charge, and thus can only impose that charge consistently with the authorizing statute.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

Government Code § 50474.3(b), which authorizes the City to impose a charge only on "rental companies" limited to the amount necessary to finance a rental facility, does not authorize imposition of this charge on Turo.

**First**, it is Civil Code § 1939.17 that authorizes "rental compan[ies]" to pass this charge to renters.  The Civil Code defines "rental company" as "a person or entity in the business of renting passenger vehicles to the public." Cal. Civ. Code § 1939.01(a). This definition contemplates that a "rental company" owns cars that it rents to the public, which excludes Turo, an online platform.  (Compl. ¶¶ 1, 44-45.)  This interplay between the Government and Civil Codes requires their uses of the term "rental company" to be construed consistently.  *See, e.g.*, *People v. Tran*, 61 Cal. 4th 1160, 1167-68 (2015) ("It is an established rule of statutory construction that similar statutes should be construed in light of one another and that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings.").

**Second**, courts construing a California statute using an undefined term consider other state definitions of that term.  *See, e.g.*, *Metric Man, Inc. v. Unemp't Ins. Appeals Bd.*, 59 Cal. App. 4th 1041, 1050 (1997) ("[W]e can look to the definition and use of that term in other statutes as a guide . . . .").  Here, the Vehicle and Insurance Codes also define "rental car company" as one "in the business of renting[] vehicles to the public." *See* Cal. Veh. Code § 11752(e); Cal. Ins. Code § 1758.89.  The Insurance Code goes still further, defining "rental agreement" as "any written agreement . . . governing the use of a vehicle ***provided by*** the rental car company" and "renter" as "any person who obtains the use of a vehicle ***from*** a rental car company[.]"  Cal. Ins. Code § 1758.89(c) & (e) (emphasis added); *see generally Phila. Indem. Ins. Co. v. Montes-Harris*, 40 Cal. 4th 151, 163 (2006) ("rental car companies" are "owners of vehicles").

**Third**, in 2010, California made clear that entities like Turo are not "rental companies" by enacting a new regime for "Personal Vehicle Sharing Programs" ("PVSPs").  Specifically, Insurance Code § 11580.24(b)(2) defines a PVSP like Turo as an entity "in the business of facilitating the sharing of private passenger vehicles for

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

noncommercial use by individuals within the state," which differs from being a "rental [car] company" "in the business of renting vehicles to the public."

The City further misconstrues Turo's claim. Turo does not allege that the Insurance Code alone "limit[s]" the City's home rule powers under California Constitution, Article XI, § 5(a), to govern its municipal affairs. (*See* Mot. at 14.) Rather, Turo alleges that the City itself has publicly admitted that it relies on Government Code § 50474.3 for authorization to charge the LAX Facilities Charge. (Compl. ¶ 49.) The City can only impose this charge consistently with the authorizing statute; it cannot rely on Government Code § 50474.3 to legitimize the charge while ignoring that provision's plain language. Nor do the City's home rule powers allow it to redefine statutory terms to change the meaning of a state legislative authorization.[6] Thus, the Court should deny the City's Motion, as Turo cannot be compelled to collect the LAX Facilities Charge or obtain a concession permit imposing that charge.

## 2. Turo has pled that the Disputed Charges are unlawful taxes.

Turo alleges that the Disputed Charges, as applied, violate California Constitution, Article XIII C, as unapproved taxes. (Compl. ¶¶ 59-78.) After the voters passed Proposition 218 in 1996 to require local governments to obtain voter approval for new taxes, local governments cast such taxes as "fees or assessments" to avoid the requirement. (*Id.* ¶ 56.) In 2010, the voters passed Proposition 26 ("Stop Hidden Taxes Initiative") to strengthen protections against unapproved taxes. (*Id.* ¶ 57.) Proposition 26, codified as Article XIII C, defines a tax requiring voter approval as "any levy, charge, or exaction of any kind imposed by a local government," with specific

---

[6] The City's argument fails for an additional reason: its home rule powers do not apply. Under the state Constitution, a city charter may authorize a city to "make and enforce all ordinances and regulations in respect to municipal affairs," but "in respect to other matters" the city "shall be subject to general laws." Cal. Const., art. XI, § 5(a). The "conduct of municipal airports is a matter subject to [California] law," not a "municipal" or "strictly local affair" subject to home rule powers. *Trans World Airlines v. City & Cty. of S.F.*, 228 F.2d 473, 475-76 (9th Cir. 1955) (interpreting language now renumbered as Art. XI, § 5(a).) The LAX Facilities Charge concerns the conduct of municipal airports, a state (not municipal) affair.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

exemptions. The City does not argue that the Disputed Charges have received voter approval; it incorrectly argues that voter approval is not needed. (*See* Mot. at 15-16.)

### a. The City seeks to "impose" the Disputed Charges.

The City wrongly contends that Article XIII C(2) only requires voter approval to "impose" taxes and that it does not "impose" the Disputed Charges because they are "the product of contract." (Mot. at 15-16.)

**First,** under Article XIII C(2), a local government "imposes" a tax when it enacts the enabling rule or regulation. *See Reid v. City of San Diego*, 24 Cal. App. 5th 343, 368 (2018). The City principally relies (Mot. at 15) on *Schmeer v. County of Los Angeles*, 213 Cal. App. 4th 1310, 1326-27 (2013), but that decision held only that an ordinance requiring consumers to pay ***retailers*** a 10-cent plastic bag fee did not "impose" a tax because the county did not receive the fee. *Id*. at 1328-29. In contrast, the City receives the Disputed Charges. (Compl. ¶ 6.) The City notes (Mot. at 15) that *Schmeer*, in dicta, referenced two cases stating that taxes are imposed "for revenue purposes," not "in return for a specific benefit conferred or privilege granted." *See Schmeer*, 213 Cal. App. 4th at 1326 (quoting *Cal. Farm Bureau Fed'n v. State Water Res. Control Bd.*, 51 Cal. 4th 421, 437 (2011); and *Sinclair Paint Co. v. State Bd. of Equalization,* 15 Cal. 4th 866, 874 (1997).) The City's invocation of these older cases (neither of which construes Article XIII C after Proposition 26) is unavailing. Article XIII C(1)(e)(1) expressly rejects the cited principle, providing that a charge imposed for a specific benefit or privilege *is* a tax if, *inter alia*, it exceeds the local government's "reasonable costs" of conferring the benefit or privilege. *See also Schmeer*, 213 Cal. App. 4th at 1322 (Proposition 26 was in part a repudiation of *Sinclair Paint*).

**Second**, the City contends that the Disputed Charges are akin to "franchise fees" which—per a "Proposition 26 and 218 Implementation Guide" authored by the League of Cities ("League Document")—"may" lack the "coercive element" connoted by Article XIII C's use of "impose." (*See* Mot. at 16.) But the League Document stated this only as to "franchise fee[s] paid . . . pursuant to an ***arm's length*** franchise agreement

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

1   *negotiated between* a local government and a franchisee." (*See* League Document at

2   58, *at* http://www.cacities.org/Prop218andProp26 (emphasis added).)   The City

3   imposes the Disputed Charges on all putative rental car companies and has *refused to*

4   *negotiate* with Turo.  (Compl. ¶¶ 5-7, 13, 89-90.)  And, the League Document cites no

5   authority holding that negotiated franchise charges that fall outside of Article XIII C's

6   seven exemptions can be assessed without voter approval; Turo has located none.[7]

7       **Third**, the City's assertion that the Disputed Charges are the "product of

8   contract" does not defeat Article XIII C scrutiny.  (*See* Mot. at 15.)  The City requires

9   rental companies to hold LAX permits (Compl. ¶¶ 5-7), but Article XIII C(1)(e) does

10  not exempt taxes incidental to permits from scrutiny.  *Cf. City of San Buenaventura v.*

11  *United Water Conservation Dist.*, 3 Cal. 5th 1191, 1212-13 (2017) (tracing the origin

12  of Proposition 26 to fees charged to permit holders).

13                 **b.    The Disputed Charges are not entrance or use charges.**

14      The City further contends that the Disputed Charges are not taxes under Article

15  XIII C(1)(e)(4), which exempts "charge[s] imposed for entrance to or use of local

16  government property[.]"  (Mot. at 16.)  The City solely relies on *City of Oakland v.*

17  *Burns*, 46 Cal. 2d 401 (1956), to argue that an airport can impose market-rate charges

18  for use of its roadways, but *Burns* was decided more than 50 years before Article XIII

19  C was enacted and does not bear on the scope of its entrance and use exemption.[8]  The

20  "entrance or use" exemption does not defeat Turo's claim for two additional reasons.

21      **First**, Turo alleges that the Disputed Charges are per-transaction booking

22  charges, not charges for entrance to, or use of, LAX property.  The LAX Facilities

23

24  ---
    [7] The League is an advocacy group with the "Mission Statement" of "expand[ing] and protect[ing] cities' "local control," not a neutral authority on what charges cities can constitutionally assess.  *See* https://www.cacities.org/Top/About/Mission-History.aspx.

25

26  [8] *Burns* is superseded by the later-enacted Vehicle Code § 9400.8, which prohibits any "local agency" from "impos[ing] a tax, permit fee, or other charge for the privilege of

27  using its streets . . . ."  *See also Cty. Sanitation Dist. No. 2 v. Cty. of Kern*, 127 Cal. App. 4th 1544, 1619 (2005).  Thus, the City's attempt to recharacterize the Disputed Charges as for the "use of its roadways" for purposes of this litigation (Mot. at 16) is unavailing;

28  such a purpose would be unlawful.  Instead, these are transaction taxes under state law.

Charge is assessed specifically to finance construction of the Consolidated Rent-a-Car Facility.  (Compl. ¶ 10; *see also* Mot. at 3 (City so admits).)  And the Gross Receipts Charge is a charge assessed as a percentage of each booking; the Complaint does not allege that it is charged for the entrance to, or use of, property.  (*See* Compl. ¶ 6.)

**Second**, even were the Disputed Charges for entrance or use, they would still need voter approval.  To qualify for a voter approval exemption, the local government bears the burden to prove that the charge (1) is not a tax; (2) is "no more than necessary to cover the reasonable costs of the governmental activity"; and (3) "bear[s] a fair or reasonable relationship to the payor's burdens on, or benefits received from" that activity.  Article XIII C(1)(e); *San Buenaventura*, 3 Cal. 5th at 1200 (for exemption, charge must meet each of these requirements).  Turo has pled that the Disputed Charges exceed any costs or burdens the City incurs, or benefits that Turo and its Users receive, from government activity related to User exchanges at LAX.  (Compl. ¶¶ 8, 61, 73.)

Thus, the "entrance and use" exemption does not defeat Turo's statement of an Article XIII C claim.[9]

### 3.  Turo alleges that the City's permitting scheme violates the DCC.

The City incorrectly contends that Turo has not pled a DCC claim under the framework established by the Supreme Court in *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707 (1972), to evaluate the reasonableness of user fees, and that the Anti-Head Tax Act, which controls fees levied on airlines and not ground transportation operators, defeats Turo's DCC claim.  (Mot. at 16-19.)  As demonstrated *infra*, both arguments fail.

### a.  Turo has pled an as-applied DCC claim under *Evansville*.

Turo has pled that the Disputed Charges violate the DCC as applied under

---

[9] The City briefly argues that Turo can only assert its own Article XIII C claim, not its Users' (Mot. at 15), but Turo can present both claims as its interests are intertwined with its Users'.  *See Kaahumanu v. Haw.*, 682 F.3d 789, 797 (9th Cir. 2012) (finding vendor standing to assert claims on behalf of clients based on *jus tertii* standing principles (assertion that a rule's application to third party violates that party's rights).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

*Evansville.  See Nw. Airlines, Inc. v. Cty. of Kent*, 510 U.S. 355, 367 (1994); *see also* SF Order at 3 (*Evansville* is "applicable test" for Turo's DCC claim).  To survive DCC scrutiny under *Evansville*, 405 U.S. at 716-17, a fee must (1) be based on a fair approximation of the use of facilities; (2) not be excessive in relation to the benefits conferred; and (3) not discriminate against interstate commerce.  To state a claim, Turo need only allege that one prong is unmet.  *See, e.g.*, *Lil' Man in the Boat, Inc. v. City & Cty. of S.F.*, No. 17-0904, 2017 WL 3129913, at *6 (N.D. Cal. July 24, 2017).

**First**, the City argues that Turo has not pled the "fair approximation" element, as it has not alleged facts regarding LAX's road and facilities costs or Turo's and its Users' benefits "from 'indirect use' of the entire LAX facility and its services."  (Mot. at 18.)  This misstates Turo's pleading-stage burden.  Fair approximation requires a "rational relationship" between fees and "benefits that are realistically available" to fee-payers.  *Am. Trucking Ass'ns v. N.Y. State Thruway Auth.*, 199 F. Supp. 3d 855, 878-79 (S.D.N.Y. 2016) (no fair approximation where 9-14 percent of plaintiffs-truckers' tolls went to maintain canal facilities that they did not use); *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 88 (2d Cir. 2009) (no fair approximation when some services for which ferry fee used (e.g., harbor dredging) did not benefit the fee-paying passengers).

The City cites no authority showing that Turo must **allege** the details of LAX's costs or indirect benefits that Turo and its Users derive from LAX facilities to state a claim.[10]  Rather, Turo need only make "plausib[le]" allegations that any *Evansville* prong is unmet.  *See Lil' Man*, 2017 WL 3129913, at *6; *Twombly*, 550 U.S. at 570.

Turo has alleged that the challenged fees do not fairly approximate Turo's and its Users' burden on LAX.  (Compl. ¶¶ 14, 52.)  The LAX Facilities Charge, imposed

---

[10] Indeed, the City solely relies on post-pleading stage DCC cases, which do not resolve the pleading burden for a DCC claim.  (Mot. at 18 (citing *Alamo Rent-a-Car, Inc. v. Sarasota-Manatee Airport Auth.*, 906 F.2d 516, 519 (11th Cir. 1990); *Alamo Rent-a-Car v. Palm Springs*, 955 F.2d 30, 31 (9th Cir. 1991); *Enterprise Leasing Co. v. Cty. of Wayne*, No. 98-1278, 1999 U.S. App. LEXIS 22992, at *7 (6th Cir. Sept. 14, 1999)).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

to finance a Rent-a-Car Center, would force Turo and its Users to pay for infrastructure that is irrelevant to them.  (*Id.* ¶¶ 7, 52.)  Likewise, the Gross Receipts Charge of 10 percent on each booking "far exceed[s]," and "is not reasonably connected or rationally related," to any costs LAX incurs due to Users meeting at the airport.  (*Id.* ¶ 61.)  These allegations state a violation of the fair approximation prong, and thus of the DCC.  *Cf.* SF Order at 3 (overruling San Francisco's demurrer to DCC claim as Turo alleged that similar fees at SFO did not meet fair approximation prong).

**Second**, the City appears to dispute whether Turo has pled the "excessive" prong for the same reasons it challenged the "fair approximation" prong.  (Mot. at 18.)  As explained above, the City's argument is inconsistent with Turo's pleading burden.

The excessive prong compares the amount paid to the benefits the payer received. *Am. Trucking*, 199 F. Supp. 3d at 879.  For instance, in *Lil' Man*, 2017 WL 3129913, at \*5, the court denied dismissal of a DCC claim alleging that the City charged landing fees that exceeded the benefit it provided to commercial vessel operators, thus accumulating a surplus exceeding maintenance costs.  *See also Bridgeport*, 567 F.3d at 86-87 (fee imposed on ferry passengers "excessive" where some purposes for which fee collected did not benefit passengers); *Am. Trucking*, 199 F. Supp. 3d at 879-80 (thruway authority's assessment of tolls on truckers "excessive" to the extent tolls used to maintain canal system facilities that were irrelevant to those truckers).

Here, Turo alleges that the Disputed Charges are excessive relative to the benefits conferred on Turo and its Users, because the City charges TNCs, taxis, and limos much less, though they burden LAX property similarly to Turo and its Users.  (Compl. ¶¶ 14, 79, 81.)  This alleged violation of the excessiveness prong alone states a DCC claim.

**Finally**, while Turo need not allege that the challenged fees discriminate against interstate commerce to state an *Evansville* claim,[11] Turo has done so.  (*See* Compl.

---

[11] The City does not dispute this, instead arguing that if Turo is presenting a "more traditional discrimination claim" rather than an *Evansville* claim, Turo has not pled the required level of discrimination against interstate commerce. (Mot. at 17-19.)  But Turo only presents an *Evansville* challenge, so this argument is irrelevant.

Cooley LLP
Attorneys At Law
San Francisco

16

Turo's Opp'n To Defendant's
Motion To Dismiss
(Case No. 2:18-cv-6055)

¶ 82.)  That is, Turo has alleged that the challenged fees burden interstate commerce, as "the majority of Turo's Users who arrange to meet a Turo car owner at LAX arrive from out-of-state and have pre-arranged their Turo booking before arriving[.]"  (*Id.*)

Thus, Turo has stated an *Evansville*-based DCC claim.

### b.      The Anti-Head Tax Act does not bar Turo's DCC claim.

The City incorrectly claims that the Anti-Head Tax Act ("AHTA"), 49 U.S.C. § 40116, defeats Turo's *Evansville*-based DCC claim because (1) if the Disputed Charges are taxes,[12] the AHTA expressly authorizes them; and (2) the AHTA preempts a DCC challenge to the Disputed Charges whether they are fees or taxes.  (*Id.*)

*Evansville* upheld state head taxes charged per airline passenger.  405 U.S. at 717.  Many jurisdictions then enacted these taxes, and Congress responded by passing the AHTA to limit such taxation of aviation.  *See* S. Rep. No. 93-12, 93rd Cong., 1st Sess. (1973), reprinted in 1973 U.S.C.C.A.N. 1434, 1450.  The AHTA neither authorizes the Disputed Charges nor preempts a DCC analysis: it does not address these ground transportation fees.  *See, e.g.*, *Palm Springs*, 955 F.2d at 31 n.1 (nothing in AHTA's "text or legislative history . . . suggests that it was intended to have any applicability to fees on ground transportation service").  Tellingly, the City cites no cases applying the AHTA at all—let alone to fees like the Disputed Charges.[13]  And each of the City's cases involving challenges to ground transportation fees analyze those

---

[12] The Disputed Charges are evaluated as unapproved taxes under Article XIII C, but as user fees (not taxes) under the DCC.  As the City's cases show, courts evaluate user fees imposed on airport concessionaires, including gross receipts charges, as DCC fees. *See Alamo*, 906 F.2d at 518; *Palm Springs*, 955 F.2d at 31; *Enterprise*, 1999 U.S. App. LEXIS 22992, at *6; (*see generally* Mot. at 12) (City defines the Disputed Charges as "Fees").  Under *Evansville*, such fees are unconstitutional if they do not rationally relate to the benefits available to payers.  *Am. Trucking*, 199 F. Supp. 3d at 878.  But Article XIII C includes many of these charges (including the Disputed Charges) as taxes requiring voter approval.  *See* Article XIII C(1)(e) (to secure voter approval exemption, local government must show charge "bear[s] a fair or reasonable relationship to the payor's . . . benefits received from[] the government[.]"); *see generally Hagman v. Meher Mount Corp.*, 215 Cal. App. 4th 82, 92 (2013) (California Constitution may classify certain charges as "taxes" which are not taxes for other purposes).

[13] The City's sole case citation in its AHTA discussion is *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 154 (1982) (Mot. at 17-18)—but contrary to the City's implication, that case did not involve the AHTA at all, let alone address AHTA preemption.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
17
TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

fees under *Evansville*, not the AHTA.  (*See* Mot. at 18 (citing *Alamo*, 906 F.2d at 519; *Palm Springs*, 955 F.2d at 31 n.1; *Enterprise*, 1999 U.S. App. LEXIS 22992, at *6-9).)

Thus, the AHTA is irrelevant to Turo's *Evansville*-based DCC claim.[14]  As Turo has pled an *Evansville* claim, the Court should deny the City's motion to dismiss.

### 4. Turo has pled that the City's classification of Turo violates equal protection.

The City incorrectly contends that Turo must "allege facts showing there is no possible rational basis for the City's classification of Turo" to state an equal protection claim and that Turo has not stated each element of its claim.  (Mot. at 19, 21-22.)  It also argues that Turo's allegations contradict a claim of discrimination, because Turo could enter into an off-airport NELA and receive access to LAX for less than what TNCs pay.  (*Id.* at 20.)  These arguments, which are based on a misapprehension of the pleading standard and Turo's business model, lack merit.

#### a. The City invokes the wrong pleading standard.

A class-of-one claimant must allege that the defendant (1) intentionally (2) treated it differently from others similarly situated (3) without rational basis.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).   "[W]hether parties are similarly situated is a fact-bound inquiry," "normally grist for the jury's mill."  *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007).  Smaller, more vulnerable classifications "should be scrutinized more carefully," and a class of one is likely "to be the most vulnerable of all."  *Jones v. Modesto*, 408 F. Supp. 2d 935, 957 (E.D. Cal. 2005); *Esmail v. Macrane*, 53 F.3d 176, 179-80 (7th Cir. 1995) (reversing dismissal of claim).[15]

---

[14] The City also invokes two Federal Aviation Administration policies regarding airport rates and charges, which merely provide guidance to federally-funded airports on their rate structures.  (Mot. at 17, n.23 (citing FAA Policy and Procedures Concerning the Use of Airport Revenue, 64 Fed. Reg. 7697, 7721 (Feb. 16, 1999); FAA Notice of Approval of Finding of No Significant Impact, 78 Fed. Reg. 55330, 55335 (Sept. 10, 2013)).)  They are facially irrelevant, and no cases seem to consider these policies in the context of an *Evansville* DCC challenge.  Thus, the Court should disregard them.

[15] California follows federal equal protection analysis, so this brief treats both claims jointly.  *See People v. Watson*, 8 Cal. App. 5th 496, 517 n.4 (2017).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

The City cites one case for the proposition that Turo must allege facts negating each possible rational basis for the City's classification, *A.J. Cal. Mini Bus, Inc. v. Airport Comm'n of City & Cty. of San Francisco*, 148 F. Supp. 3d 904, 918-19 (N.D. Cal. 2015). (Mot. at 20-21.) That case dismissed a complaint on rational basis review where the plaintiff did not allege facts overcoming the presumption of rationality. *A.J. Cal.*, 148 F. Supp. 3d at 918-19. It is inconsistent with other decisions and was wrongly decided: the court incorrectly applied a post-pleading standard and engaged in premature factual inquiry because it relied primarily on post-pleading stage caselaw. *See id.* (citing *Heller v. Doe by Doe*, 509 U.S. 312, 320-21 (1993) (summary judgment case that did not involve a class-of-one claim); *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (summary judgment case)).

Courts routinely deny motions to dismiss that argue that a complaint has not negated every possible rational basis for the government's actions, reasoning that this calls for premature factual inquiry. *See, e.g.*, *Sacramento Cty. Retired Emps. Ass'n v. Cty. of Sacramento*, No. 11-0355, 2012 WL 1082807, at *6 (E.D. Cal. Mar. 31, 2012) (denying dismissal, as it is "not the court's task on a motion to dismiss to determine whether defendant's actions were rationally related to its legitimate interest"); *Guru Nanak Sikh Soc'y v. Cty. of Sutter*, 326 F. Supp. 2d 1128, 1138 (E.D. Cal. 2003) (denying dismissal of challenge to denial of building permit for same reason).[16]

The Court should follow these better-reasoned authorities. To require a plaintiff to negate every conceivable rational basis for the government's conduct at the pleading stage would defeat all such equal protection claims at the outset, by mandating that the plaintiff engage in untenable guesswork as to the government's conceivable bases for its conduct without any discovery into those bases. *Accord Genesis Envtl. Servs.*, 113

---

[16] *See also Stamas v. Cty. of Madera*, No. 09-0753, 2010 WL 2556560, at *6 (E.D. Cal. June 21, 2010) (denying dismissal where reason for county's actions was factual determination not proper on pleadings); SF Order at 4 (citing *Genesis Envtl. Servs. v. San Joaquin Valley Unified Air Poll. Control Dist.*, 113 Cal. App. 4th 597, 607 (2003) (claim that plaintiff intentionally treated differently from comparator without rational basis survives pleadings even if plaintiff has not negated every conceivable basis).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

Cal. App. 4th at 607 (requiring plaintiff to plead facts showing no rational basis for disparate treatment might place it "in the position of pleading matters beyond its [pre-discovery] knowledge and ability to find out[.]").

### b. Turo has stated a class-of-one equal protection claim.

The City contends Turo does not allege that LAX (1) treated Turo differently from similarly-situated others (2) without rational basis. (Mot. at 19, 21-22.)

**Similarly Situated.** LAX undisputedly and intentionally seeks to treat Turo differently from TNCs like Uber and Lyft. (*See, e.g.*, *id*. at 21-22.) The City thus argues that Turo is not similarly situated to TNCs because it differs *in some ways*. (*Id*.) But equal protection analysis asks not whether Turo is *identical* to TNCs, but whether it is "similarly situated with respect to the legitimate purpose of the law . . . ." *See Brown v. Merlo*, 8 Cal. 3d 855, 876 (1973) (superseded by statute on other grounds). The City claims those purposes are to manage heavy traffic volume at the terminals and shuttle rental customers to their rental companies. (Mot. at 21-22.) The Complaint alleges that Turo and TNCs are similarly situated relative to those purposes as (1) their users' LAX pickups and drop-offs do not require shuttling to a rental facility; and (2) each company is an online platform used to coordinate those pickups and drop-offs. (Compl. ¶ 85.)

These allegations state a claim, as even "more general allegations that similarly-situated individuals were [disparately] treated" suffice.[17] *N. Grp. LLC v. Haw. Cty. Liquor Comm'n*, 681 F. Supp. 2d 1209, 1230 (D. Haw. 2009); *Willowbrook*, 528 U.S. at 565 (general allegation that plaintiff was similarly situated to other property owners stated claim). The Court should deny dismissal as Turo has identified comparators receiving more favorable treatment.

**Rational Basis.** The City invites the Court to determine prematurely that Turo Users' vehicle exchanges are more time-consuming than TNC pickups, such that LAX

---

[17] A plaintiff need not even identify a comparator to state a claim, *see Geinosky v. City of Chi.*, 675 F.3d 743, 748 (7th Cir. 2012), and if it does, it need not show an "exact correlation" to comparators. *Cordi-Allen*, 494 F.3d at 251; *Tapalian v. Tusino*, 377 F.3d 1, 6 (1st Cir. 2004) (only "roughly equivalent" comparator needed).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

can rationally treat Turo differently.  (Mot. at 21-22.)  But the Court cannot so hold as a matter of law.  TNC airport pickups can be quite time-consuming, requiring drivers to exit their vehicles and assist with loading luggage, and there are unresolved fact questions as to how Users' exchanges compare.

The City also contends that Turo's website supplies a rational basis to classify it as a rental company because it shows that Turo "considers itself to be a substitute for rental cars."  (Mot. at 21 (citing, *inter alia*, statements that Turo is "[w]ay better than a rental car" and allows Users to "[s]kip" or "bypass" "the rental counter").)  But the City has not sought judicial notice of these cherry-picked, decontextualized statements, and the Court should decline the invitation to engage in a premature factual inquiry into the City's reasons for classifying Turo.  *See* Section IV.B.4.a, *supra*.  Moreover, statements like "[w]ay better than a rental car" could easily be made by TNCs, and show only that Turo sometimes describes itself as an alternative to rental car use.  Even if prematurely considered at the pleading stage, they would not supply a rational basis for LAX to treat Turo less favorably than TNCs.  Indeed, while irrelevant at the pleading state, industry experts agree that TNCs compete heavily with the traditional rental car industry.

Turo has alleged that LAX seeks to treat it differently from similarly-situated TNCs without rational basis.  (Compl. ¶¶ 84-88); SF Order at 5 (holding "City's argument that there is a rational basis for the more favorable treatment of TNCs because of the assertedly more time-consuming activities conducted by Turo users at SFO's curbs is not amenable to [pleading-stage] resolution"); *cf. Park Shuttle N' Fly, Inc. v. Norfolk Airport Auth*, No. 03-0461, 2004 U.S. Dist. LEXIS 28116, at *23-24 (E.D. Va. Feb. 6, 2004) (denying dismissal where airport charged off-site parking company much higher fees than hotel courtesy vehicles with similar usage).  This is particularly true as LAX allegedly acted with improper motive.  *Cf. Squaw Valley Dev. v. Goldberg*, 375 F.3d 936, 945-46 (9th Cir. 2004) (denying defendants summary judgment where claimed rational basis may have been pretextual) (overruled on other grounds).

Thus, contrary to the City's threadbare argument that Turo merely engaged in a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

formulaic recitation of each element of an equal protection claim (*see* Mot. at 19 (citing *Twombly*, 550 U.S. at 555)), Turo has fact-pled each element of its claim.[18]

The Court should deny dismissal of Turo's equal protection claim.

## C.  Turo Has Pled a Justiciable Claim for CDA 230 Declaratory Relief.

### 1.  Declaratory relief is available under CDA 230.

The City argues that a declaration of immunity under CDA 230 is not available because such immunity is an affirmative defense. (Mot. at 22.)  But the CDA's text, caselaw, spirit, and purpose all show that declaratory relief is available and appropriate.

CDA 230 offers "broad" immunity that applies not only to claims asserted against a party, but also to the imposition of liability under state and local laws.  47 U.S.C. § 230(e)(3) ("No cause of action may be brought *and no liability may be imposed under any State or local law* that is inconsistent with this section.") (emphasis added); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (CDA 230 immunity has "broad" scope.  Consistent with the principle that a plaintiff threatened with government enforcement need not expose itself to liability before seeking declaratory relief, *see* Section IV.A.1, *supra*, CDA 230 immunity must be resolved "at the earliest possible stage of [a] case" because it protects a party from both "ultimate liability" *and* "having to fight costly and protracted legal battles," *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

For this reason, courts do allow declaratory relief actions to resolve whether a party is immune under CDA 230.  *See, e.g.*, *GiveForward, Inc. v. Hodges*, No. 13-1891, 2015 WL 4716046, at *1 (D. Md. Aug. 6, 2015) (plaintiff who filed CDA 230 declaratory relief suit entitled to immunity from civil claims related to fraudulent fundraiser on its platform); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262,

---

[18]  The City spuriously contends that Turo's allegations contradict its claim, as Turo could receive cheaper access to LAX than TNCs do, under an off-airport NELA. (Mot. at 20.)  This contradicts the City's assertions that Turo's business requires a concession permit. (*See* Compl., Ex. 2 at 33.)  And it misconstrues the thrust of an equal protection claim—the failure to provide *equal* treatment, *see Willowbrook*, 528 U.S. at 564, which the City cannot remedy by offering cheaper but less favorable treatment.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

1269-75 (W.D. Wash. 2012) (granting preliminary injunction because plaintiff likely to succeed on CDA 230 declaratory relief claim); *Backpage.com, LLC v. Hoffman*, No. 13-3952, 2013 WL 4502097, at *5 (D.N.J. Aug. 20, 2013) (similar).

The City's argument that Turo cannot obtain CDA 230 declaratory relief for "threatened" legal action is principally based on a single district court case, *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1007-08 (E.D. Cal. 2017). (*See* Mot. at 23-24, n.28.) *Publius* found that a platform that received a takedown letter was unlikely to succeed in obtaining CDA 230 declaratory relief, as the letter was neither a cause of action nor an imposition of liability on which CDA 230 immunity could operate. 237 F. Supp. 3d at 1007-08. *Publius* did not acknowledge *GiveForward* or *Backpage*, instead relying on a claimed lack of precedent to reach its incorrect decision. *Id*. at 1006. *Publius* contradicts CDA 230's purpose—to confer broad immunity on platforms for liability arising from user content at the earliest possible stage of the dispute. *See supra*.[19]

The City has issued multiple cease-and-desist letters threatening Turo with enforcement action based on alleged violations of Los Angeles Municipal Code § 171.02(b) and the LAX Rules, aggressively cited Users exchanging cars at LAX, and stated that it is pursuing litigation against Turo. *See* Section IV.A.1, *supra*. The City has made clear that it seeks to impose liability on Turo for its alleged failures to abide by § 171.02(b) and the LAX Rules. CDA 230 provides that this threatened liability is sufficient to trigger immunity, *see* 47 U.S.C. § 230(e)(3), and thus confers a basis for declaratory relief. *See GiveForward*, 2015 WL 4716046, at *1, *11. Allowing this

---

[19] The City's other cases are inapposite. (*See* Mot. at 22, 24 n.28.) *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009), does not hold that CDA immunity applies only to a cause of action; instead, it states that immunity applies more broadly to liability imposed under any state or local laws. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), states in dicta that CDA 230 bars lawsuits seeking to impose liability on platforms for "exercise of a publisher's traditional editorial functions," but does not hold that CDA immunity is limited to this context. *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016), observes that CDA 230 provides broad immunity from "claim[s]," but does not define "claim" or hold that CDA 230 declaratory relief is unavailable. And *Google, Inc. v. Hood*, 822 F.3d 212, 224-25 (5th Cir. 2016), held only that CDA declaratory relief was not *yet* available as to an administrative subpoena, as the subpoena was not immediately enforceable.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

declaratory relief claim further aligns with the CDA's policy of resolving such platform liability disputes "at the earliest possible stage." *Nemet*, 591 F.3d at 255.

### 2.     Turo has pled each element of a CDA 230 declaratory claim.

CDA 230 immunity applies to (1) a provider or user of an interactive computer service (2) facing liability that treats them as a publisher or speaker of information, (3) where the information at issue is provided by another information content provider. *Barnes*, 570 F.3d at 1102.   Each element is met because imposing liability on Turo based on purported violations of § 171.02(b) or the LAX Rules would treat Turo as the publisher or speaker of information provided by other content providers, its Users.

The City's sole argument that Turo has not pled the elements of CDA 230 immunity is that Turo's asserted liability is based on its activities at the airport, not its publishing of User content.[20]   (Mot. at 24.)   But only Users conduct activities at LAX. (*See* Compl. ¶ 9.)   Turo's only connection to their activities is the car listings, and subsequent User-to-User communications, on its platform that arrange car exchanges at LAX.   (*Id*.)   Users decide to exchange cars at LAX themselves.   (*Id*.)   Thus, imposing § 171.02(b) liability on Turo would implicate its role as a publisher of Users' listings.

*La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097 (C.D. Cal. 2017), recently **granted** CDA 230 immunity at the pleading stage under similar circumstances. The court rejected plaintiffs' attempt to hold Airbnb liable for unit listings where the underlying leases prohibited short-term rentals because "Airbnb hosts—not Airbnb— are responsible for providing the actual listing information." *Id*. at 1105.   So too, it is Turo's Users—not Turo—who input LAX as the location for their private car exchanges, which are the exchanges for which the City seeks to hold Turo liable.

---

[20] Turo, an online platform that hosts users' car listings (Compl. ¶ 1), is undisputedly an "interactive computer service"—one that "provides or enables computer access by multiple users to a computer server[.]" *See* 47 U.S.C. § 230(f)(2); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016); (Mot. at 24-25).   And the relevant "information" (Users' "voluntary inputs" of LAX as an exchange location (Compl. ¶ 36)) is undisputedly provided by "another content provider"—Users, not Turo. *See Dyroff v. Ultimate Software Grp., Inc.*, No. 17-5359, 2017 WL 5665670, at *10 (N.D. Cal. Nov. 26, 2017) (platform immune where users' "voluntary inputs" led to illegal offline sales).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

The City's invocation of *Airbnb, Inc. v. City & Cty. of San Francisco*, 217 F. Supp. 3d 1066, 1072-73 (N.D. Cal. 2016), and *Homeaway.com, Inc. v. City of Santa Monica*, No. 16-6641, 2018 WL 3013245 (C.D. Cal. June 14, 2018), is unavailing. These cases denied CDA 230 immunity where Airbnb and Homeaway allegedly violated municipal laws targeting payment and transaction processing services for unregistered listings—laws that directly implicated the ***platforms'*** conduct (not their users or user content).  *Airbnb*, 217 F. Supp. 3d at 1072-73; *Homeaway*, 2018 WL 3013245, at *5.  In contrast, the City contends that the illegal conduct is Users' car exchanges at LAX.  (*See, e.g.*, Compl., Ex. 2 at 33 (asserting violation based on conduct of car owners meeting their guests).)  Thus, the putative "commercial activity" that § 171.02(b) regulates is user exchanges at LAX, which depend on user-generated content on Turo's platform designating LAX as the car exchange location.

Turo's CDA 230 immunity is not defeated by the fact that these exchanges occur offline, as it is only connected to them through its online platform.  Any remedial action Turo took to prevent these exchanges would require it to modify its platform to prevent or remove listings offering LAX delivery, which CDA 230 prevents platforms from having to undertake.  *See Jane Doe No. 1 v. Backpage.com*, 817 F.3d 12, 21 (1st Cir. 2016) (CDA immunity precludes regulating a platform's features and practices that reflect editorial choices about website's content and form); *Fields v. Twitter*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016) (Twitter's decision to allow ISIS to have accounts immune as "reflect[s] choices about what [third-party] content can appear on [Twitter] and in what form").  The CDA defeats liability for alleged violations that, as here, "require recourse to [third-party] content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [c]ommunications."  *See Cohen v. Facebook*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017).

Thus, Turo has stated a declaratory relief claim for CDA 230 immunity.

## V.   CONCLUSION

The Court should deny the City's Motion to Dismiss the Complaint in full.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

TURO'S OPP'N TO DEFENDANT'S
MOTION TO DISMISS
(CASE NO. 2:18-CV-6055)

1    Dated:  October 5, 2018              COOLEY LLP

2

3                                        /s/ Matthew D. Brown
                                         Matthew D. Brown
4
                                         Attorneys for Plaintiff
5                                        TURO INC.

6
     186579084
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28