UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - CITY'S MOTION FOR A PRELIMINARY INJUNCTION (ECF No. 89, filed March 17, 2020)

TURO'S MOTION TO DISMISS CITY'S COUNTERCLAIMS (ECF No. 90, filed March 17, 2020)

KWAN AND KORNAKOV'S MOTION TO DISMISS CITY'S COUNTERCLAIMS (ECF No. 102, filed April 23, 2020)

## I.    INTRODUCTION

Plaintiff and counterdefendant Turo Inc. ("Turo") operates an online and mobile peer-to-peer car sharing platform whose users conduct business across the country, including at Los Angeles International Airport ("LAX"). Defendant and counterclaimant City of Los Angeles ("City"), which operates LAX, determined that Turo's operations are subject to the City's regulations that apply to enterprises that transact business at LAX. Turo disputes this determination. On July 12, 2018, Turo filed this action to obtain a declaration that the City cannot enforce its LAX regulations against Turo. See ECF No. 1 ("Compl.").

On January 14, 2019, the Court granted in part, and denied in part, the City's motion to dismiss. See ECF No. 39 ("MTD Order"). Turo did not file an amended pleading, and its remaining claims request a declaration that: (1) California Government Code § 50474.3 prevents the City from classifying Turo as a rental car company subject to the City's regulations and fees; (2) that the fees threatened to be charged by the City are taxes that must be submitted to, and approved by, voters pursuant to Article XIII-C, § 1(e) of the California Constitution before they can be imposed; (3) that the imposition of the fees threatened to be charged by the City would violate the Commerce Clause of the United

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

States Constitution because they are excessive and unrelated to a fair approximation of what it costs to use LAX's facilities; and (4) that the City's attempts to enforce its regulations and fees against Turo violates its rights secured by the Equal Protection Clause of the Fourteenth Amendment. See Compl. ¶¶ 104-125. The City filed an answer on March 1, 2019, ECF No. 42, and an amended answer on April 10, 2019, ECF No. 43 ("Answer").

After receiving the City's answer, the Court held scheduling conference on May 20, 2019 to set case management dates, and established a July 26, 2019 deadline to file any amended pleadings. See ECF No. 50 ("Scheduling Order"). The parties subsequently stipulated to an order modifying certain case management dates, but retaining the July 26, 2019 amendment cutoff. See ECF No. 59.

On December 30, 2019, the City moved to amend the scheduling order, and for leave to file a second amended answer and counterclaim that alleges counterclaims against Turo, as well as three individuals—Eric Kwan, Andras Smulovics, and Andrey Kornakov—who allegedly conduct business at LAX using the Turo platform. See ECF No. 71. The Court granted the motion on February 19, 2020. See ECF No. 79. The City formally filed its counterclaim on February 21, 2020. See ECF No. 80 ("CC").

The counterclaim asserts the following claims: (1) violation of Los Angeles Municipal Code ("LAMC") § 171.02(b) and related airport commerce regulations; (2) trespass; (3) aiding and abetting trespass (only against Turo); (4) unjust enrichment; and (5) unlawful and unfair business practices in violation of California Business and Professions Code § 17200 (the "Unfair Competition Law" or "UCL"). See CC ¶¶ 205-44.

Turo filed a motion to dismiss the counterclaim on March 17, 2020. See ECF No. 90 ("Turo MTD"). Kwan and Kornakov filed their own motion to dismiss the counterclaim on April 23, 2020, in which Smulovics subsequently joined. See ECF No. 102 ("K&K MTD"). The City, meanwhile, filed a motion for a preliminary injunction against Turo and the individual counterdefendants on March 17, 2020. See ECF No. 90 ("MPI"). The parties have filed oppositions and replies to each motion. See ECF No. 98 ("Opp. Turo MTD"), ECF No. 109 ("Opp. K&K MTD"), ECF No. 99 ("Turo Opp. PI."), ECF No. 107 ("K&K Opp. PI"), ECF No. 110 ("Turo MTD Reply"), ECF No. 125 ("K&K MTD Reply"), ECF No. 108 ("PI Reply"). The Court held a hearing on the motions on June 8, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

All three motions are now before the Court.[1]  Having considered the parties' arguments, and the submissions in support thereof, the Court finds and concludes as follows.

## II.   RELEVANT FACTS ALLEGED

### A.   The City Regulates Ground Transportation At LAX

The City of Los Angeles is a municipal corporation that owns and operates LAX. CC ¶ 127.  California Government Code § 50474(f) authorizes the City to "regulate the use of the airport" including the "means of transportation within or over the airport."  The City exercises this authority through its Department of Airports, known as Los Angeles World Airports ("LAWA"), as directed by ordinances that it may enact.  Id. ¶ 127.  One such ordinance states that "no person shall engage in any business or commercial activity of any kind whatsoever on the Airport without first having applied for and obtained the appropriate license, lease, or permit therefor."  See LAMC § 171.02(b).

LAWA Ground Transportation Rules and Regulations ("GTRR") § 5.3 applies this prohibition to unpermitted car rental businesses.  Pursuant to GTRR § 5.3, "unless specifically authorized[,] . . . a Rental Car Company is prohibited from causing its drivers, employees, agents, contractors or licensees to load Rental Car Company customers at the Airport."  LAWA defines a "Rental Car Company" as "[a]ny business that, directly or indirectly, provides, procures and/or brokers rental vehicles as part of its business and/or conducts, facilitates and/or manages vehicle rental activities as part of its business."  See GTRR § 1.37.  This definition specifically "includes . . .peer-to-peer car rental businesses and car sharing businesses" that operate at LAX.  Id.

A rental car company can obtain authorization to conduct business at LAX in compliance with GTRR § 5.3 and LAMC § 171.02(b) either by entering into a Rental Car Concession Agreement ("RCCA") or a Non-Exclusive License Agreement ("NELA") with LAWA.  See CC ¶ 150.  Companies entering into a RCCA establish an on-site rental car concession at LAX and may operate shuttle businesses in the central terminal area.  In exchange, these on-site companies must collect and remit customer facility charges to

---

[1] Turo also filed a motion to strike certain material raised in the City's reply brief in support of its motion for a preliminary injunction.  See ECF No. 121.  Because the Court does not rely on any of the challenged material, that motion is denied as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | | |

LAWA, and pay LAWA 10% of all gross receipts generated from their LAX business subject to a minimum annual guarantee of $730,000. Id. Car companies that operate under a NELA do not have on-site concessions and may not operate their own shuttles in the central terminal area, but LAWA provides their customers a LAWA-operated shuttle bus to a remote rental car facility. Id. In exchange, NELA-authorized businesses pay LAWA a flat monthly fee of $6,120. NELA-authorized businesses do not collect customer facilities charges or pay a percentage of their gross receipts. Id.

## B.    Turo Provides Car Sharing Services Available At LAX

Turo operates an online and mobile peer-to-peer car sharing marketplace that allows car owners to rent their cars to other Turo users. CC ¶ 162. Turo does not own any of the vehicles made available for rent on its platform, but its two-sided market facilitates transactions between its users. Car owners use Turo's platform to post rental listings, and renters use Turo's platform to search for and select a listed car to rent from pickup locations across the United States, including airports. Id. ¶¶ 163-165. Turo collects payments from renters, retains a portion as a transaction or service fee, and remits the remainder to the owner that placed the listing. Id. ¶ 165.

Turo provides its users with a variety of support services and functionalities in addition to its core market-making service. For example, Turo provides owners who list their cars with $1 million in liability insurance for each car they list, professional vehicle photography to bolster their advertisements, and pre-screening services to vet individual renters before they can rent an owner's vehicle. CC ¶¶ 167-168, 170. On the other side of the platform, Turo provides renters with 24/7 roadside assistance and emergency support, and confirms that vehicles listed on its marketplace adhere to certain quality standards. Id. ¶¶ 167-68. Turo also imposes a number of standard material terms on the rental agreements formed between users, including cancellation terms, a cleaning policy, a late return policy, a fuel policy, a smoking policy, and a pet policy. Id. ¶ 172. Turo also allows owners to have Turo set the rental price for each listed vehicle based on a variety of factors, including factors informed by internal data. Id. ¶ 171.

At least some portion of Turo's business has come from vehicles made available to rent at airports, including LAX. Id. ¶¶ 174-179. Although Turo does not mandate where owners must make their vehicles available for pick-up, Turo has expressly advertised to prospective renters that owners can deliver vehicles to nearby airports for pickup so renters can avoid the inconvenience of obtaining a rental car from an on-site rental concession

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

counter. Id. ¶¶ 174-76. This includes specific advertisements on its website related to LAX, including the representation that there are "200 cars available for delivery to Los Angeles International Airport." Id. ¶ 177.

### C.    The Individual Counterdefendants Place Vehicles For Rent On Turo

Unlike the many car owners who can use Turo to rent their personal vehicles when they are not in use, counterdefendants Kwan, Kornakov, and Smulovics are among the Turo users who each own dozens of vehicles for the purpose of placing them for rent on platforms like Turo's. See CC ¶¶ 180-82, ¶ 185, ¶¶ 187-88. Kwan's Turo page advertises a "fleet" of more than 280 vehicles. Id. ¶ 182. Since 2016, Kwan has leased those vehicles on Turo more than 32,000 times. Id. Smulovics' Turo page lists 33 vehicles, which he has rented out to Turo users more than 5,000 times since 2015. Id. ¶ 185. Kornakov does business as "101 Car Rental" and, in addition to his Turo host page, Kornakov maintains the website www.101carrental.com. Id. ¶ 188. 101 Car Rental—which represents itself as "a premium car rental company based in Los Angeles"— lists 58 vehicles, which Kornakov has rented to Turo users at least 2,300 times since 2017. Id. ¶ 187. The individual counterdefendants' vehicles are available to be picked up at LAX, sometimes with an added surcharge. See id. ¶¶ 182, 185, 187.

### D.    The City Attempts To Regulate Turo And Its High-Volume Users

LAWA learned about Turo's operations at LAX in 2016. CC ¶ 192. LAWA informed Turo on November 7, 2016 that GTRR § 5.3 and LAMC § 171.02(b) require Turo to obtain authorization to conduct business at LAX, either by negotiating a NELA or a RCCA with LAWA. Id. ¶ 193. In response, Turo denied that its business operations made it subject to the requirements of GTRR § 5.3 and LAMC § 171.02(b), and stated it would "not be seeking a concession agreement or a [NELA] for a remote off-airport rental car business at this time." Id. ¶ 194. Turo continued to operate at LAX. Id. ¶¶ 195-96. On January 30, 2017, LAWA sent a second letter to Turo informing Turo that the authorization requirements set forth in GTRR § 5.3 and LAMC § 171.02(b) apply to peer-to-peer vehicle sharing platforms like Turo. Id. Turo did not cease operations, and continued to conduct business at LAX. Id. ¶ 197.

LAWA sent Turo a formal cease and desist letter on April 3, 2017. Id. ¶ 200. Turo did not cease its operations. Id. ¶ 202. Fifteen months later, Turo filed this action against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

the City for declaratory relief in July 2018, and the City responded with the counterclaims and request for injunctive relief now before the Court in December 2019.

### E.    Traffic Conditions Worsen Within The LAX Central Terminal Area

While the City's dispute with Turo unfolded, traffic within the LAX central terminal area became increasingly congested. See CC ¶ 157. The deteriorating traffic conditions at LAX have resulted in part from the construction of a major modernization project—the Landside Access Modernization Project—that has reduced or narrowed the number of available traffic lanes within the LAX central terminal area. Id. ¶ 160. Reducing airport vehicle traffic has, accordingly, become an increasingly important priority, and LAWA has enacted new measures to remove vehicles from the central terminal area. Id. ¶¶ 160-61. For example, LAWA has required on-site rental car concessionaires, and passengers awaiting taxis or rideshare vehicles, to take shuttles to offsite locations to meet their ground transportation, including the parking lot known as "LAX-it." Id. ¶ 161. The City claims that Turo's continuing operations undermine these efforts, and give Turo an advantage over its competitors that comply with LAX regulations.

## III.    LEGAL STANDARDS

### A.    Motion To Dismiss

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see also Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996) rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

### B.     Preliminary Injunction

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The Ninth Circuit summarized the Supreme Court's clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal. Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010). Serious questions are those "which cannot be resolved one way or the other at the hearing on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|----------|------------------------|------|---------------|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

injunction." <u>Bernhardt v. Los Angeles Cty.</u>, 339 F.3d 920, 926 (9th Cir. 2003) (citation omitted).[2]

 A preliminary injunction, moreover, may only be awarded "upon a clear showing" of evidence that supports each relevant preliminary injunction factor. <u>Winter</u>, 555 U.S. at 22. "This 'clear showing' requires factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." <u>CI Games S.A. v. Destination Films</u>, No. 16-CV-05719-SVW-JC, 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (citing <u>Flynt Distributing Co., Inc. v. Harvey</u>, 734 F.2d 1389, 1394 (9th Cir. 1984)). But while "a plaintiff may not support a motion for a preliminary injunction by merely pointing to his complaint and the facts alleged therein," <u>Shaterian v. Wells Fargo Bank, Nat. Ass'n</u>, No. 11-CV-00920 SC, 2011 WL 2314151, at *4 (N.D. Cal. June 10, 2011), a "verified complaint . . . may afford the basis for a preliminary injunction." <u>K-2 Ski Co. v. Head Ski Co.</u>, 467 F.2d 1087, 1088 (9th Cir. 1972); <u>accord</u> <u>Thalheimer v. City of San Diego</u>, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief"), <u>overruled</u>

---

 [2] Turo argues that a stricter standard should apply to this motion, on grounds that the relief sought here is, they contend, "mandatory" rather than "prohibitory." <u>See</u> Turo PI Opp. at 12 (citing <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 879 (9th Cir. 2009) for the proposition that "mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages"). According to Turo, the City's motion seeks mandatory relief since it seeks to alter the status quo by directing the counterdefendants to take "affirmative" actions. <u>Id.</u>

 The Court disagrees. A motion seeks mandatory relief only when it "goes well beyond maintaining the status quo pendente lite." <u>Martin v. Int'l Olympic Comm.</u>, 740 F.2d 670, 675 (9th Cir. 1984). However, "the status quo is not simply any situation before the filing of the lawsuit, but rather the last uncontested status that preceded the parties' controversy." <u>Dept. of Parks & Rec. v. Bazaar del Mundo, Inc.</u>, 448 F.3d 1118, 1124 (9th Cir. 2006). Accordingly, in cases where a movant "seeks merely to reverse action" taken by the non-moving party that "gave rise to the parties' dispute"—in this case, preventing the counterdefendants from conducting allegedly unauthorized operations—the requested relief is prohibitory, not mandatory. <u>Auntie Anne's, Inc. v. Wang</u>, No. 14-CV-01049-MMM, 2014 WL 11728722, at *8 (C.D. Cal. July 16, 2014).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

on other grounds Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers, 941 F.3d 1195 (9th Cir. 2019); see also Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2949 (3d ed. 2020) (explaining that "pleadings may be considered" as evidence in support of a preliminary injunction "if they have been verified"); e.g., Myers v. Thompson, 192 F. Supp. 3d 1129, 1138 (D. Mont. 2016) (stating that the plaintiff's "verified complaint is treated as an affidavit, and thus may be used as evidence to support an injunction").

## IV.   DISCUSSION

Turo and the individual counterdefendants move to dismiss the City's counterclaims, while the City requests a preliminary injunction against Turo and each of the individual counterdefendants based on several of those claims.  The Court first addresses the motions to dismiss, and then turns to consider the preliminary injunction.

### A.   Motions To Dismiss

Turo and the individual defendants each contend that the City's counterclaims fail to allege facts sufficient to support the elements of its claims.  In addition, Turo claims that it is immune from all of the City's claims pursuant to the liability shield of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230.

For the reasons discussed in the sections that follow, the Court finds that CDA § 230 does not immunize Turo from the City's claims, and that the City has adequately alleged each of its claims for relief.

### (1)   CDA Section 230 Immunity

Section 230 of the CDA "provides internet companies with immunity from certain claims in furtherance of its stated policy 'to promote the continued development of the Internet and other interactive computer services.'" HomeAway.com, Inc. v. City of Santa Monica, 918 F.3d 676, 681 (9th Cir. 2019) (quoting 47 U.S.C. § 230(b)(1)).  The relevant statutory text provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The statute then expressly pre-empts inconsistent state laws: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Id. § 230(e)(3).

The immunity is "not meant to create a lawless no-man's-land on the Internet." Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1164 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

Cir. 2008) (en banc).  Conduct that is "unlawful when posed face-to-face or by telephone" does not "magically become lawful when [conducted] electronically online."  <u>Id.</u> Accordingly, the Ninth Circuit has limited the scope of Section 230 to "extend immunity to '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'"  <u>HomeAway.com, Inc.</u>, 918 F.3d at 681 (quoting <u>Barnes v. Yahoo!, Inc.</u>, 570 F.3d 1096, 1100–01 (9th Cir. 2009)).

Turo claims that the City's counterclaims seek to hold Turo liable for content published by its users on Turo's platform in contravention to this immunity.  <u>See</u> Turo MTD at 14-27.  Specifically, Turo claims the City's claims are barred by Section 230 because they seek to hold Turo liable for the actions of its users who publish rental listings and select LAX as the designated pickup point for car rentals.  According to Turo, because the content of the rental listings are provided by third-party users, and because the City's claims seek to hold Turo—an interactive computer service—responsible for that content, Section 230 applies.

The City does not dispute that Turo is an interactive computer service, but it contends that Section 230 does not apply because the City seeks to hold Turo liable for its role facilitating online rental car transactions, not as the publisher or speaker of its users' listings.[3]

---

[3] The City alternatively contends that Section 230 immunity does not apply because Turo is, in any event, also a contributing publisher to the content of its users' rental listings since it allegedly encourages owners to make their vehicles available at LAX, and thus to publish listings that state that their vehicles may be picked up at LAX.  <u>See</u> Opp. Turo MTD at 4-9.  The Ninth Circuit "define[s] 'publication' in this context to 'involve reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content.'"  <u>HomeAway.com</u>, 918 F.3d at 681-82 (quoting <u>Barnes</u>, 570 F.3d at 1102); <u>see also</u> <u>Roommates.com</u>, 521 F.3d at 1170–71.

There is a split of authority as to whether soliciting or encouraging content makes an interactive platform service a "publisher" for the purpose of applying Section 230 immunity.  <u>Compare</u> <u>Opperman v. Path, Inc.</u>, 84 F. Supp. 3d 962, 987 (N.D. Cal. 2015) (holding that an interactive service will not be deemed a publisher if it "merely encourage[s] the creation of the challenged conduct; the [interactive service] must have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|----------|------------------------|------|---------------|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

The Court agrees. "Section 230(c)(1) limits liability based on the function the defendant performs, not its identity." Force v. Facebook, Inc., 934 F.3d 53, 81 (2d Cir. 2019) (Katzmann, C.J., concurring in part). Applying this principle, the Ninth Circuit held in HomeAway.com that Section 230 did not immunize companies providing peer-to-peer home rental platform services from a City of Santa Monica ordinance that requires homeowners to register their properties with the city before listing them on a home sharing platform. See HomeAway.com, 918 F.3d at 681-684. The court explained that the immunity did not apply because the City of Santa Monica did not seek to hold the platform companies "liab[le] for the content of the bookings" posted by their users, but only for their actions "processing transactions for unregistered properties." Id. at 682, 684. The Ninth Circuit underscored this holding in Dyroff v. Ultimate Software Group, Inc., 934 F.3d 1093 (9th Cir. 2019), where it repeated that the immunity did not apply to the defendants in HomeAway.com because "the vacation rental platforms" in that case "did not face liability for the content of their listings" but rather "from facilitating unlicensed booking transactions." Id. at 1098; accord Airbnb v. City and County of San Francisco, 217 F. Supp. 3d 1066, 1074-74 (N.D. Cal. 2016) (concluding that Section 230 did not immunize

required another to create that content") and La Park La Brea A LLC v. Airbnb, Inc., 285 F. Supp. 3d 1097, 1107 (C.D. Cal. 2017) (quoting same), with F.T.C. v. Accusearch Inc., 570 F.3d 1187, 1199-1200 (10th Cir. 2009) (holding that defendant service was a publisher because it "affirmatively solicited" the challenged content) and F.T.C. v. LeadClick Media, LLC, 838 F.3d 158, 176 (2d Cir. 2016) (holding that defendant service "materially contribut[ed]" to the publication of the challenged content, and could thus be deemed a publisher of that content, by soliciting it).

The Ninth Circuit has not squarely addressed the issue, but the en banc decision in Roomates.com strongly suggests that encouragement can suffice to make an interactive service a publisher. See Roomates.com, 521 F.3d at 1172 (holding that Section 230 did not immunize Roomates.com because Roomates.com "elicits the allegedly illegal content and makes aggressive use of it in conducting its business," and distinguishing Roomates.com from the defendant website in Carafano v. Metrosplash, Inc., 339 F.3d 1119, 1124 (9th Cir. 2003), to whom the immunity applied because that website "did absolutely nothing to encourage the posting" of the challenged material). The Court need not decide the issue, however, because, as explained in the accompanying text that follows, the Court concludes that the City's claims do not involve the publication of content, but rather Turo's conduct to facilitate car rental transactions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

Airbnb from a San Francisco ordinance that held the platform service "liable only for [its]
own conduct, namely for providing, and collecting a fee for, booking services in connection
with an unregistered unit").

To reach its decision, the HomeAway.com court rejected the platform companies'
objections that the Santa Monica ordinance required the companies (i) "to monitor the
content of a third-party listing" and (ii) to "remove third party content" that does not
comply. Id. at 682-683. The Ninth Circuit held that "the only monitoring that appears
necessary in order to comply with the Ordinance relates to incoming requests to complete
a booking transaction—content that, while resulting from the third-party listings, is
distinct, internal, and non-public," id. at 682, and that while "removal of these listings"
might present "the best option 'from a business standpoint[,] . . . the underlying duty 'could
have been satisfied without changes to content posted by the website's users,'" id. at 683.

Consistent with the holding in HomeAway.com, recent decisions by federal courts
across the country have also denied Section 230 immunity to platform services where it
was only the platforms' commercial transaction-facilitating functions that were subject to
regulation. See, e.g., Airbnb, Inc. v. City of Bos., 386 F. Supp. 3d 113, 122 (D. Mass.
2019) (concluding that Section 230 did not immunize Airbnb from city ordinance that only
applied to Airbnb "in its capacity as a booking agent and payment processor"); State Farm
Fire & Cas. Co. v. Amazon.com, Inc., 390 F. Supp. 3d 964, 973–74 (W.D. Wis. 2019)
(concluding that "Amazon's active participation in the sale"—including its function
"payment processing"—"is not activity immunized by the CDA"); see also Oberdorf v.
Amazon.com Inc., 930 F.3d 136, 153 (3d Cir. 2019), opinion vacated pending rehr'g en
banc, 936 F.3d 182 (3d Cir. 2019) (holding that Section 230 did not immunize Amazon
from common law claims that sought to hold Amazon liable for its "role in the actual sales
process"—including "processing customer payments, relaying funds and information to
third-party vendors, and collecting the fees it charges for providing these services"—since
that conduct "extends beyond a mere editorial function" and does not constitute publication
of content by third-parties).

Turo contends that HomeAway.com is not applicable because, unlike the City of
Santa Monica's claims, "the City's claims here would require Turo to monitor content
created and posted by its third-party users (i.e., location information for vehicle handoffs)
and to remove offending content or disallow such posts." Turo MTD at 20. But
HomeAway.com is on point: in both cases, municipal rules imposed registration
requirements as a condition of doing business over a peer-to-peer platform within a covered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

jurisdiction, see GTRR §§ 1.37, 5.3; LAMC § 171.02(b),[4] and the platform services were alleged to have "process[ed] transactions" that did not comply with those requirements, see CC ¶¶ 192-202.  The only "location information" that Turo would need to monitor to comply with the City's rules is not materially dissimilar from the registration information that the HomeAway.com defendants were required to monitor: both sets of information are supplied by users directly to the platform companies and "relate[d] to incoming requests to complete a booking transaction."  HomeAway.com, 918 F.3d at 682.  And any obligation on Turo to "remove offending content" could also be "satisfied without changes to content posted by the website's users" by, for example, eliminating an owner's ability to post a vehicle for rent at an address (or with geographic coordinates) that fall within the LAX excludable area in the first place.  Id. at 683.

Because "the Platforms face no liability for the content of the bookings" but "only from" facilitating "unlicensed bookings," Section 230 does not immunize their claims.  See HomeAway.com, 918 F.3d at 684.

### (2)    Sufficiency of the Factual Allegations

Turo and the individual counterdefendants also contend that the City fails to plead facts sufficient to state any of the claims against them.  For the reasons discussed below, the Court disagrees.

### (a)    LAMC § 171.02(b) Claim

LAMC § 171.02(b) states that "[n]o person shall engage in any business or commercial activity of any kind whatsoever on the Airport without first having applied for and obtained the appropriate license, lease, or permit therefor."  GTRR § 5.3 establishes that "the appropriate license" for car rental activities—which includes "peer-to-peer car rental businesses and car sharing businesses," GTRR § 1.37—is either a NELA or a RCCA.

The City alleges that Turo and the individual counterdefendants violate this prohibition by continuing to conduct business at LAX without obtaining, or even

---

[4] Because the City's other claims—for trespass, unjust enrichment, and resulting violations of the UCL—arise from materially identical conduct (i.e., conducting business on its premises without authorization), the HomeAway.com court's reasoning applies equally to Turo's asserted immunity to those claims as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

attempting to obtain, either a NELA or a RCCA.  See CC ¶¶ 192-204, ¶¶ 205-214.  The City further alleges that it has suffered and continues to suffer harm as a result of the counterdefendants unauthorized actions, including lost revenue and increased congestion and passenger delay within the central terminal area.  Id. ¶¶ 213-14.

Turo and the individual counterdefendants concede that they have not obtained a NELA or a RCCA, but they contend that the City fails to allege that (i) they are car rental businesses, (ii) that they conduct commercial activity "on" the airport, and (iii) that the City suffers any actual injury as a result of their conduct.  See Turo MTD at 27-28, K&K MTD at 5-10.  None of these arguments is persuasive.

First, the City alleges that the counterdefendants operate rental car businesses as defined by GTRR § 1.37.  See CC ¶ 144.  That regulation clearly defines car rental businesses to include "peer-to-peer car rental businesses and car sharing businesses" like Turo, 101 Car Rental, and the other individual counterdefendants' car sharing businesses.  See GTRR § 1.37.  It makes no difference that LAWA's definition of "car rental business" in GTRR § 1.37 may be dissimilar from other definitions contained within unrelated bodies of California law.  See Alcala v. City of Corcoran, 147 Cal. App. 4th 666, 670 (2007) (holding that the statutory definition of a term in one California statute does not govern the application of the same term in a separate California statute); cf. Turo MTD at 28 n. 8 (pointing to distinct statutory definitions for rental car businesses under various provisions of the California Insurance Code, the California Vehicle Code, and the California Civil Code).  LAWA's authority to regulate commercial activity at LAX, and to define car rental business, derives from the authority delegated to the City by California Government Code § 50474(f) to "[r]egulate the use of the airport," and the California Government Code does not define a car rental business or company.[5]  LAWA accordingly had discretion to define

---

[5] Even if the California Government Code defined car rental business, that definition would need to apply to § 50474, and even then, that definition could still permit LAWA's interpretation absent clear statutory language prohibiting it.  See Yamaha Corp. of Am. v. State Bd. of Equalization, 19 Cal. 4th 1, 7 (1998) (reviewing courts may defer to a California agency's interpretation of an ambiguous state statute to the extent its reasoning is persuasive); see also  New Cingular Wireless PCS, LLC v. Public Utilities Com., 246 Cal. App. 4th 784, 810 n.22 (2016) (explaining that "[t]he analytic framework established in Yamaha drew heavily from Justice Jackson's opinion for the United States Supreme Court in [Skidmore v. Swift & Co, 323 U.S. 134, 140 (1944)][.]").  In this respect, the fact that California Government Code § 50474.3(a)(5) defines "on-airport rental vehicle

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

such businesses in the course of administering its authority to regulate the airport's use, and its definition plainly reaches each of the counterdefendants.

Second, the City alleges that the counterdefendants conduct business "on" the airport. See CC ¶¶ 174-79, ¶¶ 181-89. The contention that the counterdefendants cannot conduct business "on" the airport as a matter of law because they process transactions online is without merit. Turo operates a peer-to-peer car sharing platform that facilitates car rental transactions that take place, among other locations, "on" LAX premises. Each individual counterdefendant, moreover, executes vehicle handoffs "on" those same premises in order to complete a transaction. See CC ¶¶ 183-84. The individual counterdefendants' contention that they do not conduct any "recognizable business or commercial activity" on LAX premises because they do not literally "purchas[e] or sell[] goods at LAX" but only "us[e] the public areas of LAX" to complete their transactions, see K&K MTD at 8, rests upon an unreasonably narrow interpretation of the regulations. Turo's contention that it "does not conduct any commercial activity at LAX" because "Turo has no physical presence" at LAX and "never enters LAX in order to engage in commercial activity there" is likewise flawed. See Turo MTD at 28. Especially in a digital economy, commercial activity often takes place beyond the location of an actual point-of-sale. See S. Dakota v. Wayfair, Inc., 138 S. Ct. 2080, 2095 (2018) (observing that "instant access to most consumers via any internet-enabled device" means that "a business may be present in a [jurisdiction] in a meaningful way without that presence being physical in the traditional sense of the term") (citations and internal marks omitted); cf. K&K MTD at 7. To take just one example, commercial airlines generate millions of dollars a year in business revenue from LAX passenger bookings that, in many if not most cases, are executed wholly online. That is commercial activity that takes place at LAX.[6] The

---

companies" as a subclass of airport "rental vehicle companies" (not otherwise defined) indicates that the latter may include companies that, like peer-to-peer car sharing services, conduct remote operations.

[6] Wilson v. Cook, 197 Cal. App. 3d 344 (1987), cited in the individual counterdefendants' reply, is not persuasive authority on this point. That case concerned a state parks regulation that "prohibits the solicitation, sale, hawking or peddling of merchandise or services in the park area without a permit." Id. at 348 (citing 14 Cal. Code Regs. § 4331). The court held that a sailboarding company did not violate Section 4331 by providing unpermitted sailboarding lessons in a state park since the "teaching activities were incidental to prior arrangements made at respondents' retail stores outside the park."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

individual counterdefendants are correct that California courts give "regulatory language its plain, commonsense meaning," Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1145-46 (2011) (cited in K&K MTD at 6), and in this case, the plain, commonsense meaning of "commercial activity . . . on the Airport" includes each of the counterdefendants' business operations.

Third, to the extent it is an element of the City's LAMC § 171.02(b) claim for damages,[7] the City has adequately alleged facts articulating the actual injuries it has suffered and continues to suffer as a result of the counterdefendants' conduct. See CC ¶¶ 213-14. Specifically, the City claims that the counterdefendants' unauthorized business activities at LAX have caused the City to lose revenue from unpaid fees and also suffer disrupted operations from the increased congestion and passenger delay those activities have caused within the central terminal area. Id. It is immaterial to liability whether the City's injuries are "de minimis," as the individual counterdefendants allege, or not. Cf. K&K MTD at 9-10. If injury is indeed a substantive element of its LAMC § 171.02(b) claim for damages, the City need only allege (and, to prevail, prove) *some* actual injury to satisfy that element of its claim under California law. See, e.g., Jaimez v. Daiohs USA, Inc., 181 Cal. App. 4th 1286, 1306 (2010) ("While there must be some injury in order to recover damages, a very modest showing will suffice."). The City has done so. See CC ¶¶ 213-214.

The City has therefore alleged facts that, if proven, would be sufficient to establish a claim for a violation of LAMC § 171.02(b). The motions to dismiss this claim are denied.

**(b)     Trespass and Abetting Trespass Claims**

"Trespass is an unlawful interference with possession of property." Staples v. Hoefke, 189 Cal. App. 3d 1397, 1406 (1987). To prove trespass under California law, the

---

Id. at 350. But that construction of Section 4331—a prohibition addressed to a narrow range of specific conduct (soliciting, selling, hawking, peddling)—is inapposite to the proper construction of the LAX rules at issue here, which more generally prohibit unpermitted "commercial activity" at LAX.

[7] Although the City is suing to enforce the ordinance, enjoin the counterdefendants, and recover civil penalties, it also includes a request for damages in its countercomplaint. See CC, Request for Relief ¶ 6.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

City must allege (1) "ownership or control of the property" at issue, (2) the counterdefendants' "intentional, reckless, or negligent entry onto the property," (3) the counterdefendants' "lack of permission for the entry or acts in excess of permission," (4) harm, and (5) that the counterdefendants' conduct was "a substantial factor in causing the harm." Ralphs Grocery Co. v. Victory Consultants, Inc., 17 Cal. App. 5th 245, 261-62 (2017). Aider and abettor liability may be "imposed on one who aids and abets the commission of a [trespass] if the person . . . knows the other's conduct constitutes a [trespass] and gives substantial assistance or encouragement to the other to so act[.]" Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325 (1996) (citations and marks omitted). To be found liable, the abettor must act "with the intent of facilitating" the trespass. Casey v. U.S. Bank Nat. Assn., 127 Cal. App. 4th 1138, 1146 (2005) (citation and marks omitted). Substantial assistance, in turn, may be established by alleging facts that demonstrate that the alleged abettor's actions were a "substantial factor" in the trespasser's "ability to perpetrate" the trespass. See Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1132 (C.D. Cal. 2003) (addressing the sufficiency of a pleading alleging intentional tort abettor liability).

The City alleges that it controls LAX, that the counterdefendants have entered or caused others to enter LAX to transact business (or at least, in Turo's case, that it knowingly provided substantial assistance to its users to do so), that the counterdefendants do not have permission to enter for this purpose since they do not have a NELA or a RCCA, and that the City has lost revenue and suffered increased congestion and passenger delays as a result. See CC ¶¶ 174-79, ¶¶ 181-89, ¶¶ 213-14, ¶¶ 216-22.

The counterdefendants contend that these allegations are inadequate to state a claim for trespass because the City either (i) does not allege that the defendants physically entered the property, and/or (ii) cannot as a matter of law allege that the defendants lacked permission to enter LAX, to the extent they entered to make vehicle handoffs, since LAX is a public facility accessible to the public. See Turo MTD at 29-30; K&K MTD at 10-12. Turo additionally contends that the City fails to state its abetting trespass claim because (iii) its substantial assistance assertions are conclusory and fail to "suggest[] that Turo provides any assistance to users with respect to . . . actually entering airport property." Turo MTD at 30. The Court disagrees.

First, the City need not allege actual physical entry to state a claim for trespass to real property. "An entry may also be accomplished by setting in motion an agency which, when put in operation, extends its energy to the plaintiff's premises to its material injury."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|----------|------------------------|------|---------------|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

Elton v. Anheuser-Busch Beverage Grp., Inc., 50 Cal. App. 4th 1301, 1306 (1996) (citing 75 Am. Jur. 2d Trespass § 11). The City's allegations that Turo and the counterdefendants facilitated and or else caused others—including some of the individual counterdefendants themselves, see CC ¶¶ 183-185, ¶ 185, ¶ 187—to enter LAX property to transact business without authorization satisfies this element. See Team Enters., LLC v. W. Inv. Real Estate Tr., 647 F.3d 901, 912 (9th Cir. 2011) (holding that "action causing" the "unauthorized" "entry" onto plaintiff's property may "support a cause of action for trespass"); see also 5 Witkin, Summary of California Law, Torts § 803 (11th ed. 2019) ("There may be trespass by personal intrusion of the wrongdoer or by . . . causing the entry of some other person").

Second, although it is undisputed that LAX is a public facility operated by a public agency, it is well-established that "merely permitting public access to a government facility does not necessarily open it" for all purposes, or prevent the government from limiting access permission. San Diego Comm. Against Registration & the Draft (CARD) v. Governing Bd. of Grossmont Union High Sch. Dist., 790 F.2d 1471, 1475 (9th Cir. 1986) (citing Greer v. Spock, 424 U.S. 828, 836 (1976)). The government's power to regulate its own property is broad, and may even permit the revocation of access permissions that implicate upon core constitutional rights. Cf. generally Minnesota Voters All. v. Mansky, 138 S. Ct. 1876, 1885 (2018) (reviewing the Supreme Court's "forum-based approach for assessing restrictions that the government seeks to place on the use of its property") (citation omitted). In this case, and pursuant to its authority to legitimately restrict the use of its property, the State of California has enacted legislation permitting the City to "[r]egulate" the "use" of the LAX premises. Cal. Govt. Code § 50474(f). The City has exercised that authority by passing LAMC § 171.02(b), which imposes a relatively modest prohibition that restricts the public from using LAX to transact unauthorized business activity. The fact that LAX remains publicly accessible to persons who abide by its rules does not somehow prevent the City, via LAWA, from revoking permission to those who do not.

Third, as for aider and abettor liability, the City alleges that it repeatedly informed Turo that its users were accessing LAX property to conduct unauthorized business transactions. The City also demanded that Turo cease and desist from facilitating further unauthorized transactions on airport premises. See CC ¶¶ 192-202. Despite its knowledge that the City claimed that continuing to facilitate transactions by processing bookings and coordinating vehicle handoffs would violate the City's rules and constitute an unauthorized use of its property, Turo continued to facilitate the unauthorized activities on LAX property. Id. These facts establish both the intent and the substantial assistance elements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

of the abettor claim. With respect to intent, acting with actual knowledge that continuing to process bookings at LAX would cause a trespass at LAX amounts to acting "with the intent of facilitating" the trespasses at LAX. Casey, 127 Cal. App. 4th at 1146; Fiol, 50 Cal. App. 4th at 1325 (intent established where alleged abettor "knows the other's conduct constitutes a [trespass] and gives substantial assistance" anyway); see also People v. Villalobos, 145 Cal. App. 4th 310, 322 (2006) (specific intent to abet a wrongdoer can be inferred as a matter of California law by showing that the alleged aider and abettor took intentional actions with knowledge that those actions would assist the wrongdoer). And with respect to substantial assistance, the City's allegations demonstrate that Turo's facilitation services were not just a "substantial factor" but indeed essential to the commission of the alleged trespasses. Neilson, 290 F. Supp. 2d at 1132.[8]

For the foregoing reasons, the Court finds that the City has adequately alleged its claims for trespass and abetting the same. Accordingly, the motions to dismiss these claims are hereby denied.

**(c)     Unjust Enrichment Claim**

Although the City asserts an unjust enrichment claim, unjust enrichment is not a claim for relief but instead a "general principle underlying various legal doctrines and remedies" that "is synonymous with restitution." Rosal v. First Fed. Bank of California, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) (collecting cases). In substance, the City claims it is entitled to restitution on grounds that the counterdefendants have extracted a benefit by violating City regulations and trespassing on City property. See McBride v. Boughton, 123 Cal. App. 4th 379, 388 (2004) (a plaintiff may be entitled to restitution

---

[8] Turo's reliance on Schulz v. Neovi Data Corp., 152 Cal. App. 4th 86, 94 (2007)—a case that in material part *reversed* an order sustaining a demurrer—is misplaced. In that case, the Court of Appeal held that the plaintiff adequately alleged that two credit card processing companies aided and abetted the operation of an illegal lottery by averring facts that the companies provided processing services to the lottery operator "to encourage participation and make more money" despite having "prior knowledge" that the lottery was illegal. Id. at 94-96. The court ruled that the allegations were sufficient to allege that the companies acquired "a direct stake in the success" of the illegal lottery, and knowingly provided services to facilitate it. Id. That is, in substance, what the City claims Turo did here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

under an unjust enrichment theory where a defendant wrongfully extracts a benefit from the plaintiff ).

The counterdefendants contend that the City is not entitled to recover pursuant to an unjust enrichment theory because its "unjust enrichment claim is derivative of its other claims and fails for the same reasons." See Turo MTD at 31-32 (citing Van de Kamp v. Bank of America, 204 Cal. App. 3d 819, 855 (1988) for the proposition that a plaintiff is not entitled to recover for unjust enrichment where the defendant's "benefit was derived lawfully"); accord K&K MTD at 13 ("the City fails to allege any basis on which it could be entitled to restitution against the [individual counterdefendants] because nothing in the [countercomplaint] establishes an injustice that must be remedied").

Because the Court finds that the City has adequately alleged its claims for violations of LAMC § 172.02(b), for trespass, and for aiding and abetting trespass, see supra §§ IV.A.2.a-b, the motions to dismiss this claim are also denied.

### (d)    UCL § 17200 Claim

The City also asserts that the counterdefendants' conduct violates California Business and Professions Code § 17200 prohibitions against unlawful and unfair business conduct. The UCL prohibits "any unlawful, unfair or fraudulent business practice[.]" Cal. Bus. & Prof. Code § 17200. "Because Business & Professions Code § 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Hodsdon v. Mars, Inc., 891 F.3d 857, 865 (9th Cir. 2018) (citing Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 181 (1999)). The City here asserts violations only of the unlawful and unfair prongs.

The UCL's unlawful prong "borrow[s] violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." Farmers Ins. Exch. v. Super. Ct., 2 Cal. 4th 377, 383 (1992). "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim" under the unlawful prong. Plascencia v. Lending 1st Mortgage, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008). Here, the City predicates its unlawful prong UCL claim on the counterdefendants' alleged violations of LAMC § 171.02(b).[9]

---

[9] The City cannot predicate its unlawful prong violation on the trespass claims because "a common law violation . . . is insufficient . . . to state a claim under the unlawful

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|----------|------------------------|------|---------------|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

The scope of the UCL's unfair prong "is not clearly defined under the UCL." Microsoft Corp. v. My Choice Software, LLC, No. 16-CV-162187-DOC-KES, 2017 WL 5643210, at *8 (C.D. Cal. Oct. 10, 2017). "There is authority," however, "that the test to determine whether a business practice is unfair differs depending on whether the plaintiff in a UCL case is a competitor of the defendant or a consumer." Drum v. San Fernando Valley Bar Assn., 182 Cal. App. 4th 247, 253 (2010). The City is neither a competitor nor a consumer of the counterdefendants' services, but its unfairness theory (asserted in the City's enforcement capacity, see CC ¶ 240) appears to fall more within the competitor category. See CC ¶ 242 (alleging UCL unfair prong violation predicated on their wrongful acquisition of "an unfair competitive advantage over their car rental company competitors"). To state a competitor claim under the unfair prong of the UCL, the City is required to allege "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). Here, the City alleges that "Turo has gained an unfair competitive advantage for itself and the other counterclaim-defendants over rental car businesses duly licensed by the City to operate at LAX" by operating without the required permits. See CC ¶ 126.

The counterdefendants move to dismiss the UCL claims on grounds that (i) the City lacks the statutory standing to assert those claims in an enforcement capacity, (ii) that the unlawful claim fails because the predicate LAMC § 171.02(b) claim fails, and (iii) because the City fails to allege facts to describe how the counterdefendants have competed unfairly. See Turo MTD at 32; K&K MTD at 14-15. The Court disagrees with these contentions.

First, the City has alleged facts that establish its standing to bring its claims in an enforcement capacity. Sections 17204 and 17206(a) of the UCL authorize "a city attorney of a city having a population in excess of 750,000" to bring an enforcement action under

---

prong of § 17200." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1044 (9th Cir. 2010); see also, e.g., Pneuma Int'l, Inc. v. Cho, 249 Cal. Rptr. 3d 93, 100 (2019), vacated on other grounds, 2019 WL 3313607 (Cal. Ct. App. July 24, 2019) (holding that "the trial court did not err in declining to base a UCL cause of action on the common-law tort of trespass" because "a trespass . . . does not satisfy the UCL's 'unlawful' prong").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

the UCL.  The Court takes judicial notice of the fact that the City of Los Angeles, the counterclaimant, has a population of approximately 3,990,456 residents.  <u>See</u> U.S. Census Bureau, Quick Facts: City of Los Angeles (July 1, 2018).  Turo's contention that the City has "not added the city attorney as a party to the case" is unavailing.  The City Attorney's Office is counsel for the City, and the City has alleged that it is bringing its UCL claim in an enforcement capacity.  <u>See</u> CC ¶ 240.

Second, because the Court finds that the City has adequately alleged its LAMC § 171.02(b) claim, <u>see</u> <u>supra</u> § IV.A.2.a, the counterdefendants' challenge to the unlawful prong that depends on the insufficiency of that claim is without merit.

Third, the City has, notwithstanding the counterdefendants' contentions, alleged sufficient facts to support its unfair prong claim.  Specifically, the City alleges that Turo and the individual counterdefendants have obtained an unfair advantage over their competitors by conducting operations at LAX without complying with the regulations that would otherwise limit and levy fees against those operations.  "The UCL reflects the Legislature's intent to discourage business practices" like those alleged here "that confer unfair advantages in the marketplace to the detriment of . . . law-abiding competitors." <u>Rose v. Bank of Am., N.A.</u>, 57 Cal. 4th 390, 397 (2013).  The Court accordingly finds that the City has alleged "conduct that . . . threatens or harms competition" that states a claim under the unfair prong of the UCL.  <u>Cel-Tech</u>, 20 Cal. 4th at 187.

The motions to dismiss are therefore also denied as to the UCL claim.

\*       \*       \*       \*

For the foregoing reasons, the motions to dismiss are **DENIED**.

**B.     Preliminary Injunction**

The City moves to preliminarily enjoin the counterdefendants from continuing to operate at LAX without what it contends is the necessary authorization.  It bases its motion on three claims: (i) its LAMC § 171.02(b) claims against all counterdefendants, (ii) its trespass claim against the individual counterdefendants, and (iii) its aiding and abetting trespass claim against Turo.

For the reasons discussed below, the Court grants the City's motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

### (1)    Merits of the City's LAMC § 171.02(b) and Trespassing Claims

To prevail on its motion, the City must present evidence that at least raises "serious questions" as to its likelihood to succeed on the merits of its three predicate claims. Cottrell, 622 F.3d at 1053. The City's ordinance violation and trespass theories are straightforward and discussed in more detail in the preceding sections addressing the counterdefendants' motions to dismiss: according to the City, the counterdefendants violate LAMC § 171.02(b), and trespass on City property at LAX, by conducting business at LAX without the requisite permissions. See supra §§ IV.A.2.a-b. The Court has concluded that these allegations—if proven to be true by satisfactory evidence—would be sufficient to establish each of the counterdefendants' liability. Id. The Court has also concluded that Section 230 of the CDA does not immunize Turo from the City's LAMC § 171.02(b) and trespassing claims, as a matter of law. See supra § IV.A.1.

The question presented pursuant to the merits prong of the preliminary injunction analysis is thus limited to whether the evidence submitted by the City in support of its claims is sufficient to raise a serious question as to their merits. The counterdefendants contend that the City cannot meet this standard because it "relies exclusively on allegations in its unverified" complaint "and the summary declaration of a LAWA employee purporting the verify the allegations based on some unknown combination of her personal knowledge and 'information provided to [her] by City employees and counsel[.]'" See Turo PI Opp. at 13 (quoting Irwin Decl., ¶ 3).

A "verified complaint . . . may afford the [evidentiary] basis for a preliminary injunction." K-2 Ski Co., 467 F.2d at 1088 (discussed supra at § III.B). Michelle Irwin, the City's verifying declarant, states that she is a senior manager at LAWA. See Irwin Decl., ¶ 1. She asserts that she has reviewed the counterclaims, id. ¶ 2, and that "[t]he factual allegations in the counterclaims are true and accurate based on my personal knowledge and information provided to me by City employees and counsel, with the exception of the amount of certain fees charged by the City that have increased since the Counterclaims were filed as a result of an annual adjustment," id. ¶ 3. The factual allegations she verifies accordingly include the City's specific allegations about the size of the individual defendants' vehicle fleets available on Turo, the individual defendants' advertisements about the availability of their vehicles to Turo users arriving at LAX (including by "pickup," "delivery," or shuttle service via "unmarked shuttle vans"), the number of transactions the individual defendants have completed using the Turo platform, and Turo's own representations that owners can deliver vehicles to nearby airports for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

pickup so Turo users can avoid the inconvenience of obtaining a rental car from an on-site rental concession counter. Id. ¶¶ 174-76, ¶ 182, ¶¶ 184-85, ¶¶ 187-88. She also verifies the City's allegations that LAWA informed Turo that its users were accessing LAX property to conduct unauthorized business transactions, that LAWA demanded that Turo cease and desist from facilitating further unauthorized transactions on airport premises, and that despite the knowledge that continuing to facilitate transactions by processing bookings and coordinating vehicle handoffs would violate the City's rules and constitute an unauthorized use of LAX property, Turo continued to facilitate the unauthorized activities. See CC ¶¶ 192-202.

Turo and the individual counterdefendants are correct that a court deciding a motion for a preliminary injunction "need not" consider "inadmissible evidence" and "may" discount "conclusory affidavits" or those "without sufficient support in facts." Barcarse v. Cent. Mortg. Co., No. 12-CV-05608-JAK (FFMx), 2012 WL 12878674, at *2 (C.D. Cal. Aug. 1, 2012) (discussed in Turo PI Opp. at 13, 28) (citing Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985)). Whether or not Irwin's summary declaration lacks the sort of foundation that would allow her to testify at trial in accordance with the Federal Rules of Evidence, it is "within the discretion of the district court" to consider such evidence at the preliminary injunction stage. Barcarse, 2012 WL 12878674 at *2 (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir. 1988)). And it is well-established that "a preliminary injunction may be granted based on affidavits or the allegations in a 'verified complaint,' despite their lack of conformity with the Federal Rules of Evidence regarding hearsay and personal knowledge." Neighborhood Assistance Corp. of Am. v. First One Lending Corp., No. 12-CV-00463 DOC-MLGx, 2012 WL 1698368, at *14 (C.D. Cal. May 15, 2012) (citing Republic of the Philippines, 862 F.2d at 1363, K-2 Ski Co., 467 F.2d at 1088, and Flynt, 734 F.2d at 1394). Courts in this district have not hesitated to grant motions for preliminary injunction, even when solely supported by such evidence. See, e.g., Ford Motor Co. v. Ultra Coachbuilders Inc., No. 00-CV-00243-VAP, 2000 WL 33256536, at *1 (C.D. Cal. July 11, 2000), aff'd, 238 F.3d 428 (9th Cir. 2000) (granting plaintiff's motion for a preliminary injunction even though plaintiff "submitted no evidence in support of its Motion other than its verified Complaint" because "[t]he Court may consider allegations in a verified Complaint in ruling on a Motion for Preliminary Injunction") (citing Republic of the Philippines, 862 F.2d at 1363 and K–2 Ski Co., 467 F.2d at 1088).

Pursuant to the foregoing, and upon review of the countercomplaint's specificity and incorporated exhibits, the Court finds that the verified allegations in the City's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|----------|------------------------|------|---------------|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

countercomplaint not only raise serious questions as to the merits of the City's claims, but indicate a strong likelihood of success on those claims. Critically, the Court reaches this conclusion in part because the evidence submitted by Turo and the individual counterdefendants generally confirms the City's verified allegations. See, e.g., Kwan Decl., ¶¶ 5-7 (acknowledging that Kwan uses Turo to pick up customers at LAX and deliver them to the vehicles they rent from him, but contending that he does "not conduct point-of-sale transactions while on LAX property," and only completes customer bookings "offsite" or "electronically"); Kornakov Decl., ¶¶ 5-6 (acknowledging that Kornakov's provides car sharing services to passengers at LAX using Turo, including by using "areas of LAX that require a fee to use, such as parking structures," but contending that he "ensure[s] the fee is always paid to the City," and that he does "not conduct point-of-sale transactions while on LAX property"); Benn Decl., ¶ 5 (President of Turo acknowledging that "users may coordinate through Turo's platform to hand off cars at or near LAX"); Mangahas Decl., ¶ 6 (Turo Vice President of Analytics admitting that between March 1, 2020 and March 25, 2020 alone, "there were 2,234 trips" booked on Turo where "the host and guest had selected LAX as the preliminary location for the vehicle handoff," and that these transactions were expected to generate "at least $526,286"); Park Decl., ¶ 6 (Turo's traffic engineering expert acknowledging that, in 2018, 124 Turo vehicle handoffs took place at LAX on average each day, but contending that "Turo user handoff volumes are immaterial and essentially unnoticeable"). At no point, moreover, does any representative from Turo dispute receiving the City's demands, or continuing to facilitate and/or execute vehicle handoffs at LAX without either a NELA or a RCCA. Neither Kwan, Kornakov, nor Smulovics claim to possess a NELA or a RCCA, either.

Taken together, these facts comprise a "clear showing" that the City is likely to prevail on its claims that Turo and the individual counterdefendants are conducting unauthorized business transactions at LAX, and that the individual counterdefendants are consequently trespassing on LAX property with Turo's substantial assistance.

### (a)   Irreparable Harm

Although the City contends that it need not establish irreparable harm because this case "involve[es] statutory enforcement" and "the applicable statute authorizes injunctive relief," MPI at 8-9 (quoting F.T.C. v. Consumer Defense LLC, 926 F.3d 1208, 1214 (9th Cir. 2019), which holds that "the traditional irreparable injury showing is not required" in certain federal enforcement actions), the City also contends it has and will, in any event, continue to suffer irreparable injury in the form of increased congestion at LAX and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

trespasses upon its property rights, id. at 19-21. See also CC ¶¶ 157, 160-61, 190, 213-14 (verified allegations).

Turo and the individual counterdefendants respond that (i) the rule in Consumer Defense has no application to this case because it involves enforcement of a municipal ordinance and not a federal statute, (ii) that the City fails to present evidence that its claimed injuries are irreparable, and (iii) that the City's delay in seeking the injunction supports an inference that its claimed injuries are not irreparable. See Turo PI Opp. at 13-23; K&K PI Opp. at 11-15.

As to their first argument, the Court agrees with Turo and the counterdefendants that Consumer Defense does not exempt federal actions to enforce state or municipal law from the federal procedural requirement that requires a preliminary injunction movant to demonstrate irreparable harm. The Supreme Court has held that "a departure" from the ordinary rule of federal equity—adopted by Congress in Federal Rule of Civil Procedure 65—that requires a preliminary injunction movant to establish irreparable injury can only be justified if such a departure was clearly "intended" by *Congress*." eBay Inc. v. 10 MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (emphasis added). "Congress," the Ninth Circuit later elaborated, "may intervene and guide or control the exercise of the courts' discretion," but before a federal court can "depart from established principles," Congressional intent must be clear: "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv., 789 F.3d 1075, 1089-90 (9th Cir. 2015). Put simply, "eBay precludes presumptions of or categorical rules regarding irreparable injury unless *Congress* has restricted the traditional equitable jurisdiction of the court." Perez v. Valley Garlic, Inc., No. 16-CV-01156-AWI-EPG, 2017 WL 772147, at *16 (E.D. Cal. Feb. 27, 2017) (emphasis added). Courts must therefore apply the "traditional four-factor framework that governs the award of injunctive relief" unless Congress clearly indicates otherwise. Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 979-980 (9th Cir. 2011) (citing eBay, 547 U.S. at 394).

Although the Ninth Circuit has not had occasion to squarely address whether a state law enforcement agency (like the City here) must also establish irreparable harm to obtain a preliminary injunction even when predicated on a state law that, as a matter of substantive law, does not require such a showing in a suit by such agency, the Court finds that the Ninth Circuit's reasoning in Consumer Defense, Cottonwood, and Perfect 10 supports a conclusion that the irreparable injury requirement applies equally to such movants. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

Seventh Circuit took a similar position in a case involving materially similar facts. In City of South of Bend v. Consolidated Rail Corp., 974 F.3d 1340 (7th Cir. 1992) (unpublished disposition), the court stated that the City of South Bend would have been obligated to establish irreparable harm before it could obtain a "temporary injunction" in federal court to prevent the defendant train operator from violating "municipal ordinances prohibiting the sound of train whistles." While the Seventh Circuit ultimately dismissed the case for lack of subject matter jurisdiction, the court's discussion of the irreparable harm requirement is consistent with the Ninth Circuit's holding that "any presumption in favor of injunctive relief is unwarranted unless Congress expresses its intent" to create such a presumption. Cottonwood, 689 F.3d at 1089-1090. The Court finds the Seventh Circuit's ruling to be persuasive and consistent with the law of this circuit. See Perez, 2017 WL 772147, at *16 n.16 (acknowledging that "[t]he Second Circuit appears to be of a different understanding," but distinguishing its decision in City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d 115, 120-21 (2d Cir. 2010)—which, under different facts, excused the City of New York from establishing irreparable harm to enforce a state regulation that did not require such a showing when an analogous federal statute that the City also sought to enforce also did not require that showing—as inconsistent with the law of this circuit).[10]

Having determined that the City is required to demonstrate irreparable harm unless clearly exempted by Congress, the next question is whether Congress has created such an exemption for state law enforcement actions. The City does not contend that it has, and with good reason. Congress obviously did not enact LAMC § 171.02(b) or GTRR § 5.5, so the exemptions contained within those provisions cannot evince Congressional intent to

---

[10] The City's contention that a state or local government can invoke different procedural standards to claims deriving from its enactments is also inconsistent with the federal courts' longstanding obligation to apply relevant federal procedural rules when they conflict with state procedural law. See Hanna v. Plummer, 380 U.S. 460, 471 (1965); Sims Snowboards, Inc. v. Kelly, 863 F.2d 643, 646 (9th Cir. 1988) (holding that the four-part test for a preliminary injunction, which derives from Federal Rule of Civil Procedure 65, is procedural since it "set[s] out the procedural requirements for injunctions"); e.g., Anselmo v. Mull, No. 12-CV-1422 WBS, 2012 WL 5304799, at *5 (E.D. Cal. Oct. 25, 2012) ("[F]ederal, not state, standards govern issuance of a preliminary injunction when a federal court is sitting in diversity or exercising supplemental jurisdiction over state law claims.") (citing cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

waive the irreparable harm requirement, or otherwise alter the ordinary equitable procedure of the federal courts.  Nor has Congress provided that state law enforcement lawsuits are exempt as a general matter.

The Court therefore concludes that the City is required to demonstrate irreparable injury.  But ultimately, whether or not the City is required to establish irreparable injury to obtain a preliminary injunction, the Court finds that the City has made that showing here. According to the City's verified allegations, the counterdefendants' unauthorized operations aggravate traffic congestion within LAX.  See, e.g., CC ¶¶ 213-14.  The counterdefendants do not dispute that they facilitate or execute vehicle handoffs within LAX, see Kwan Decl., ¶¶ 5-7, Kornakov Decl., ¶¶ 5-6, Mangahas Decl., ¶ 6, and Turo's own expert estimates that, at least as of two years ago, approximately 127 vehicles were handed off at LAX as a result of Turo every day, see Park Decl., ¶ 6.  While conclusory assertions of possible injury are not enough to establish irreparable harm, see Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013), the counterdefendants' *own* declarations demonstrate that their operations are in fact specifically impacting traffic flow at LAX—at least to *some* degree.  That injury—and the resulting trespass against the City's property rights—is not compensable at law, and is sufficient to establish irreparable harm.  See, e.g., eBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1067 (N.D. Cal. 2000) (holding that defendant's "ongoing violation of eBay's fundamental property right to exclude others from its computer system" was "akin to the traditional notion of a trespass to real property" and therefore "causes sufficient irreparable harm to support a preliminary injunction," even where total effect of defendant's unauthorized access to eBay's systems amounted to "no more than 0.70% of the data transferred by eBay" systems).

The City's delay—it filed suit requesting injunction relief nearly four years after learning about Turo's conduct, CC ¶ 192—does not preclude injunctive relief.  While "a party requesting a preliminary injunction must generally show reasonable diligence," Benisek v. Lamone, 138 S. Ct. 1942, 1944-45 (2018), "delay is only one factor among the many that we consider in evaluating whether a plaintiff is likely to suffer irreparable harm absent interim relief," and "by itself is not a determinative factor in whether the grant of interim relief is just and proper."  Cuviello v. City of Vallejo, 944 F.3d 816, 833 (9th Cir. 2019) (citations omitted); see also Lydo Enters., Inc. v. City of Las Vegas, 745 F.2d 1211, 1214 (9th Cir. 1984) (explaining that courts are "loath to withhold relief solely on that ground").  "[T]ardiness is not particularly probative in the context of ongoing, worsening injuries."  Arc of California v. Douglas, 757 F.3d 975, 990 (9th Cir. 2014).  For example,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|----------|------------------------|------|---------------|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

in <u>Arc of California</u>, "the alleged injuries resulted from various cuts in compensation, enacted over a period of time and having a cumulative impact." <u>Id.</u> The effect was such that "the magnitude of the potential harm bec[ame] apparent gradually, undermining any inference that the plaintiff was sleeping on its rights." <u>Id.</u> (citation omitted). Here, the City claims that the cumulative deleterious impacts of Turo's operations only became apparent over time as construction at LAX constrained traffic lanes and made Turo's continued trespass and regulatory violations increasingly intolerable, even if only marginally so. <u>See</u> CC ¶¶ 157, 160-61; <u>Bidder's Edge</u>, 100 F. Supp. 2d at 1067.

The Court accordingly concludes that the City is likely to suffer continued irreparable harm in the absence of injunctive relief.

> **(b)      Balance of Equities and Public Interest**

The remaining factors also favor a preliminary injunction.

First, the City contends that equity favors an injunction because, without one, the City's real property rights will be violated and it will have diminished ability to exercise "regulatory control" over its property, including to "control congestion," "reduce delays," "ensure the safety of those traveling on its roadways," and "assure a level playing field among rental car companies." <u>See</u> MPI at 17-19. The counterdefendants respond that an injunction would devastate their businesses and/or impose onerous compliance costs. <u>See generally</u> Kwan Decl., Kornakov Decl., Gangadharan Decl., Mangahas Decl. But "a defendant who builds a business model based upon a clear violation of the property rights of [a] plaintiff cannot defeat a preliminary injunction by claiming the business will be harmed if the defendant is forced to respect those property rights." <u>Bidder's Edge</u>, 100 F. Supp. 2d at 1068–69 (citing <u>Triad Sys. Corp. v. Southeastern Exp. Co.</u>, 64 F.3d 1330, 1338 (9th Cir. 1995) (defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities") and <u>Cadence Design Sys., Inc. v. Avant! Corp.</u>, 125 F.3d 824, 830 (9th Cir. 1997) (reversible error to consider business effects on a copyright infringer's business in considering balance of equities after concluding that plaintiff was likely to succeed on merits of infringement action)); <u>accord</u> <u>Windsurfing Int'l Inc. v. AMF, Inc.</u>, 782 F.2d 995, 1003 n. 12 (Fed. Cir.1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

Second, as for the public interest, the public has an interest in the protection of property rights, in their representatives' ability to exercise regulatory control over the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

City's publicly-operated airport, and in fair and lawful competition, especially in an emerging market. See WeRide Corp. v. Kun Huang, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019) (concluding that "an injunction would be in the public interest" because "[c]ourts often find that the public has a strong interest in protecting . . . property rights," and because "an injunction would also promote fair and lawful competition in an emerging market"); Verinata Health, Inc. v. Ariosa Diagnostics, Inc., 329 F. Supp. 3d 1070, 1122 (N.D. Cal. 2018) (asserting that "the public interest nearly always weighs in favor of protecting property rights"); United States v. Cty. of Maricopa, 151 F. Supp. 3d 998, 1011 (D. Ariz. 2015), aff'd 889 F.3d 648 (9th Cir. 2018) (observing that a government's "duty to enforce its laws may justify" injunctive relief); United States v. Tribune Publ'g Co., No. 16-CV-01822-ABP (JWx), 2016 WL 2989488, at *5 (C.D. Cal. Mar. 18, 2016) (stating that "the preservation of competition is always in the public interest" and favors injunctive relief).

The Court for these reasons finds that equity and the public interest support the requested injunction.

\*       \*       \*       \*

For the foregoing reasons, the motion for a preliminary injunction is **GRANTED**.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the motions to dismiss the City's counterclaims, and **GRANTS** the City's motion for a preliminary injunction. Additionally, Turo's motion to strike certain material from the City's reply is **DENIED AS MOOT** because the Court does not consider that material in reaching its disposition.

The counterdefendants, and any persons acted in concert with them, shall be enjoined from engaging directly or indirectly in any commercial activity at LAX, without written authorization from the City, as follows:

(1)    Turo shall not permit its users to use the Turo platform to arrange vehicle handoffs at LAX, where a vehicle handoff shall be deemed to include (a) leaving a vehicle on LAX property and arranging for a Turo user or customer to access it there, or (b) travelling on any roadway on LAX property in order to pick up or drop off a vehicle for any Turo user or customer;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-06055-CAS-GJSx | Date | June 19, 2020 |
|---|---|---|---|
| Title | TURO INC. v. CITY OF LOS ANGELES | | |

   (2)    the individual counterdefendants shall not conduct any vehicle handoffs at LAX, where a vehicle handoff shall be deemed to include (a) leaving a vehicle on LAX property and arranging for a Turo user or customer to access it there, or (b) travelling on any roadway on LAX property in order to pick up or drop off a vehicle for any Turo user or customer;

   (3)    Turo shall not accept any reservations or payments for, or otherwise facilitate in any way, any car-sharing transaction leading to a vehicle handoff that takes place on LAX property, where a vehicle handoff shall be deemed to include (a) leaving a vehicle on LAX property and arranging for a Turo user and/or customer to access it there, or (b) travelling on any roadway on LAX property in order to pick up or drop off a vehicle for any Turo user or customer.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |